## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENJOY TECHNOLOGY, INC., *et al.*,[1] | Case No. 22-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, (II) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS, AND (III) GRANTING RELATED RELIEF

By this motion (the "Motion"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"), respectively, pursuant to sections 105(a), 362(d), 363, 507(a), 541(b)(1), 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, compensation and employee benefits, and (b) continue to administer the Employee Programs in the ordinary course of business, including payment of prepetition obligations related thereto, (ii) authorizing all banks to honor prepetition checks for payment of prepetition employee obligations, and (iii) granting other related relief. In support of this Motion, the Debtors relies upon and incorporates by reference the *Declaration of John Boken in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

contemporaneously herewith. In further support of this Motion, the Debtors, by and through their undersigned proposed counsel, respectfully state as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 105, 362, 363, 507, 541, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## GENERAL BACKGROUND

4.  On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5.  The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  To date, no official committees have been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or examiner.

7.     The Debtors commenced these Chapter 11 Cases due to a rapidly declining cash position that has rendered them unable to pay operating expenses, including payroll.  The Debtors are seeking immediate approval of a debtor-in-possession financing facility to be provided from Asurion, LLC ("Asurion") to fund the Debtors' operating expenses and the consummation of a sale of substantially all of their U.S. assets.  The Debtors intend to expeditiously file a motion to approve bidding procedures and designate Asurion as the stalking-horse bidder for the sale of substantially all of their U.S. assets.  Pending the approval of the sale, the Debtors will continue to operate in the ordinary course of business and provide uninterrupted, top-quality service.

8.     A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, is set forth in greater detail in the First Day Declaration, which is incorporated by reference herein.

**DEBTORS' WORKFORCE AND EMPLOYEE PROGRAMS**

9.     The Debtors' ability to preserve their business and successfully consummate a sale transaction during these Chapter 11 Cases is dependent on the expertise and continued enthusiasm and service of their Employees (as defined below).  The Employees are a critical part of the Debtors' overall business and they perform a wide variety of functions critical to the administration of these Chapter 11 Cases and the Debtors' restructuring.  Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency.  In many instances, the Employees include highly trained personnel who are not easily replaced.  The Debtors seek the Employees' continued commitment and support, and as such, must take all necessary steps to retain their Employees and bolster their morale to preserve and maximize the value of the Debtors' estates during their anticipated sale process.

10.     In return for their valuable service, the Debtors offer their Employees: (i) direct compensation in the form of wages and salaries; (ii) other employee compensation such as paid time off and expense reimbursement; (iii) certain medical and insurance related benefits such as medical, dental, and vision insurance, as well as life insurance, disability insurance, business travel accident benefits, workers' compensation insurance, flexible spending account and health spending account, and COBRA benefits; (iv) certain work/life benefits, such as an employee assistance program and commuter benefits; and (v) a 401(k) retirement plan (collectively, and as further described in detail below, the "Employee Programs").[3]

11.     Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Programs in the ordinary course of business.  Out of an abundance of caution, the Debtors request the right to modify, change, and discontinue any of their Employee Programs and to implement new programs, policies, and benefits, in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law.

12.     By this Motion, the Debtors seek authority, but not direction, to pay the aggregate amounts on account of the Employee-related obligations, including related expenses, fees, and costs incident to the foregoing, including amounts to third-party service providers and administrators (the "Employee Obligations") set forth in the table below:

---

[3] The summary of the Employee Obligations provided herein is qualified entirely by the Debtors' official policies or other practices, programs, or agreements, whether written or unwritten, evidencing an arrangement among the Debtors and their Employees (each, an "Official Policy").  In the event of any inconsistency or ambiguity between this summary and an Official Policy, the terms of such Official Policy shall govern, but, for the avoidance of doubt, in no event shall the Debtors make any payments or honor any prepetition obligations other than what is authorized by the Court after consideration of this Motion.

| Employee Obligations | Interim Amount | Final Amount |
|---|---|---|
| **I. Wages, Salaries, and Related Payroll Taxes** | | |
| a. Employee Wages and Salaries | $3,200,000 | $3,200,000 |
| b. Social Security, Income Taxes and Other Withholdings | $1,700,000 | $2,900,000 |
| b. Supplemental Workforce Wages | $2,100,000 | $2,100,000 |
| c. Employee Incentive Program | $700,000 | $700,000 |
| e. Payroll Processor Fees | $55,000 | $55,000 |
| **II. Paid Time Off and Expense Reimbursements** | | |
| a. Accrued Paid Time Off | Final Basis Only | $1,550,000 |
| b. Expense Reimbursement | $40,500 | $55,500 |
| **III. Medical and Insurance Benefits** | | |
| a. Health Insurance Benefits | $1,345,000 | $2,645,000 |
| b. Additional Insurance Benefits | $125,000 | $250,000 |
| c. Disability Benefits | $1,500 | $3,000 |
| d. Business Travel Accident Benefits | $0 | $0 |
| e. Workers' Compensation Insurance | $175,000 | $350,000 |
| f. Flexible Spending Account and Health Savings Account | $2,500 | $5,000 |
| g. COBRA | $0 | $0 |
| **IV. Work/Life Benefits** | $3,500 | $6,000 |
| **V. 401(k) Retirement Plan** | $0 | $0 |
| **Total:** | **$9,448,000** | **$13,819,500** |

13.     As summarized in the preceding chart and described in further detail below, the Debtors estimate that, as of the Petition Date, they owe approximately $13,819,500 on account of the Employee Programs, $9,448,000 of which will become due and owing in the interim period of these Chapter 11 Cases (the "Interim Period").

14.     To the extent any individual is owed in excess of the $15,150.00 limit contained in section 507(a)(4) of the Bankruptcy Code (the "Priority Cap") on account of prepetition Employee Programs, the Debtors will not pay any such individual an amount more than the Priority Cap on account of such obligations without further order of the Court.

## I. The Debtors' Employees and Supplemental Workforce

15. As of the Petition Date, the Debtors employ approximately 1,707 individuals (collectively, the "Employees") in the United States to perform a wide variety of critical functions. The Employees are divided into (i) Employees who are tied to the Debtors' headquarters in Palo Alto and perform tasks ranging from marketing, customer service, technical support, administrative, legal, finance, human resources, and management-related tasks, and (ii) field Employees who are based all over the United States and perform the order fulfillment component of the Debtors' in-home experience. The vast majority of the Employees are employed on a full-time basis, and a relatively small number of Employees are employed on a part-time basis. Approximately 1,349 Employees are paid on an hourly basis, and approximately 358 Employees are paid a salary. None of the Employees are party to a collective bargaining agreements or other similar labor agreements.

16. In addition to the Employees, the Debtors also employ independent contractors and temporary workers (the "Supplemental Workforce," and together with the Employees, the "Workforce") throughout the entire organization to perform various services, including, without limitation, engineering services, consulting, payroll assistance, and financial consulting. The Supplemental Workforce consists of approximately sixty-two (62) individuals as of the Petition Date. The Debtors retain the services of the Supplemental Workforce through approximately eighteen (18) vendors and certain staffing agencies and remit payment for the independent contractors and temporary workers to such vendors and staffing agencies. The Debtors' Supplemental Workforce is a critical complement to the work performed by the Debtors' Employees.

17. Without the continued service and dedication of the Employees and Supplemental Workforce, it will be difficult, if not impossible, to operate the Debtors' businesses without an

unexpected or inopportune interruption and to prosecute these Chapter 11 Cases in a manner that will maximize the value of the Debtors' estates. Thus, the Debtors believe that it is necessary and in the best interest of their estates and all stakeholders to seek the relief requested herein to successfully accomplish the foregoing, minimize the personal hardship that the Employees and Supplemental Workforce will suffer if prepetition Employee Obligations are not paid when due or as otherwise expected, and maintain morale and keep the Workforce focused during this critical time. Moreover, the Debtors have determined that continuation of the Employee Programs is vital to reducing the level of attrition that might otherwise occur.

## II.     Wages, Salaries, and Related Payroll Taxes

### a.     Employee Payroll and Payroll Deductions

18.     In the ordinary course of business, the Debtors pay their salaried Employees and their hourly Employees on a bi-weekly basis. The Debtors' payroll obligation is approximately $13,000,000 per month, including Withholdings (defined below). As of the Petition Date, the Debtors believe that $3,200,000 are owed on account of wages and salaries. The Debtors request authority, but not direction, to pay postpetition wages and salaries in the ordinary course when they become due.

19.     In connection with paying wages and salaries, the Debtors routinely withhold from Employee payroll disbursements amounts that the Debtors are required to transmit to third parties ("Withholdings"). Examples of such Withholdings include, without limitation, FICA (Social Security and Medicare), federal, state and local income taxes, garnishments, health care payments and certain voluntary payroll deductions. As of the Petition Date, the Debtors believe that approximately $1,700,000 are owed on account of Withholdings, including both the Debtors' obligations and the Employees' obligations. In addition, the Debtors have set aside approximately $1,200,000 on account of the Debtors' portion of payroll taxes for a portion of 2020 that have been

deferred and will become due on December 31, 2022 ("Deferred 2020 Payroll Tax Liabilities").

Such Withholdings, to the extent that they remain in the Debtors' possession, constitute moneys

held in trust and, therefore, are not property of the Debtors' bankruptcy estates.

20.     The Debtors hereby request authority, but not direction, to direct $1,700,000 on

account of Withholdings to the appropriate parties when such amounts become due including the

$1,200,000 on account of Deferred 2020 Payroll Taxes Liabilities on a final basis.

**b.     Supplemental Workforce Wages**

21.     As of the Petition Date, the Debtors estimate owing approximately $2,100,000 in

the aggregate for unpaid prepetition services provided by the Supplemental Workforce and for

various fees and other costs owed to the various vendors and staffing agencies, approximately all

of which the Debtors estimate will come due within the Interim Period.  If these amounts go

unpaid, the Supplemental Workforce may stop providing their services to the Debtors.

Accordingly, the Debtors request authority, but not direction, to continue to retain and pay the

Supplemental Workforce and the vendors and staffing agencies for service fees and costs as they

become due in the ordinary course of business.

**c.     Employee Incentive Program**

22.     To incentivize Employees, the Debtors offer an incentive program (the "Employee

Incentive Program"),[4] pursuant to which, field Employees—except Employees that do fulfillment

operations—across the United States have an opportunity to earn monetary awards for meeting

certain sales performance metrics throughout the calendar year.  Approximately 1,268 Employees

---

[4]     The Debtors do not believe that any "insider" as that term is defined in section 101(31) of the Bankruptcy Code participates in the Employee Incentive Program (the "Insiders").  For the avoidance of doubt, the relief sought under this Motion with respect to the Employee Incentive Program does not include the payment of any obligation to any Insider.  The Debtors shall not make any non-ordinary course additional compensation, bonus, incentive, or severance payments to Insiders without further order of this Court.

participate in the Employee Incentive Program. The precise goals and compensation structure of the Employee Incentive Program vary by location and Employee role but involves an individual performance component tied to total revenues generated by an Employee for the Debtors' strategic partners and may also involve products or accessories sold by an Employee as well as customer service provided. Amounts awarded to participating Employees under the Employee Incentive Program are assessed and typically paid out monthly in arrears, with such amounts subject to claw back if the Employee no longer qualifies for the bonus due to subsequent returns of merchandise. In the first five months of the year, the Debtors have paid, in the aggregate, approximately $3,300,000 to eligible non-Insider Employees under the Employee Incentive Program. As of the Petition Date, the Debtors owe eligible non-Insider Employees approximately $700,000 on account of the Employee Incentive Program, $700,000 of which will come due and owing during the Interim Period.

### d.   Payroll Processing Fees

23.    The Debtors' payroll process is administered through ADP. In the ordinary course, the Debtors send the net payroll amount, including payroll taxes, to ADP, and on the following day, ADP initiates an electronic fund withdrawal directly from the Debtors' disbursement account with Silicon Valley Bank for the Employees' wages. ADP then initiates an electronic fund withdrawal for payroll taxes to government agencies and handles garnishments as necessary.

24.    The Debtors pay service fees of approximately $55,000 per month to ADP (the "Payroll Processor Fees") on account of the administration of Employee payroll. The Debtors believe that, as of the Petition Date, they owe up to $55,000 of Payroll Processor Fees to ADP, $55,000 of which will be due and owing shortly after the Petition Date. Accordingly, the Debtors

seek authority, but not direction, to pay the Payroll Processor Fees in an amount up to $55,000 on interim and final bases.

## III.     Other Employee Compensation: Paid Time Off and Expense Reimbursement

25.     In addition to salaries, wages, and performance bonuses, the Debtors offer eligible[5] Employees other forms of compensation, including (a) paid time off ("Paid Time Off") and certain other paid leave (collectively, the "Paid Leave"), and (b) reimbursement of certain business expenses incurred by Employees.  These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified Employees to maximize the value of the Debtors' business.  Accordingly, the Debtors request authority, but not direction, to honor outstanding prepetition obligations with respect to the Paid Time Off and expense reimbursement policies in the ordinary course of business, and subject to the Debtors' discretion and applicable restrictions under the Debtors' Official Policies.

### a.     Accrued Paid Time-Off

26.     The Debtors provide their Employees paid time off for vacation, illness, and tending to personal matters that cannot be handled outside of operational hours.  Hourly Employees are eligible to receive cash payouts for unused Paid Time Off.  Exempt salaried Employees have unlimited Paid Time Off, which are not eligible to receive cash payouts.  The Debtors comply with applicable state laws with respect to accrued Paid Time Off.

27.     In addition, the Debtors provide certain other forms of Paid Leave, many of which are required by law, including paid holidays throughout the year for certain Employees, workers' compensation leave, parental leave, bereavement leave, jury or court attendance, and time spent voting.

---

[5]   Only Employees (and not Supplemental Workforce) are eligible for benefits.

28.    The Debtors estimate that, as of the Petition Date, the value of accrued and unused Paid Leave equals approximately $1,550,000.  This amount, however, is not a current cash obligation.  Accordingly, the Debtors seek authority, but not direction, to continue honoring the Paid Leave policy, and, subject to entry of the Final Order, to pay up to $1,550,000 on account of prepetition Paid Leave.  However, the Debtors will not pay any Employee an amount more than the Priority Cap on account of any prepetition Employee Obligations, including prepetition Paid Leave, without further order of the Court.

### b.    Expense Reimbursement

29.    In the ordinary course of business, the Debtors routinely reimburse Employees for certain pre-approved, reasonable expenses incurred within the scope of their employment, including expenses for relocation expenses and phone stipend (collectively, the "Reimbursable Expenses").  The Debtors offer a $40 per month stipend to eligible Employees who use their personal phones for work purposes (the "Phone Stipend").  The Debtors also reimburse Employees for approved relocation expenses ("Relocation Expenses").  In the last twelve (12) months prior to the Petition Date, the Debtors reimbursed Employees approximately $10,000 per month on account of the Phone Stipend and $40,000 per month on account of Relocation Expenses.[6]

30.    The Debtors utilize Concur Technologies, Inc. ("Concur") as the third-party expense consolidator by which the Employees may submit their Reimbursable Expenses, including on account of the Phone Stipend and Relocation Expenses.  The Debtors pay Concur approximately $10,500 per quarter for these administrative services. As of the Petition Date, the

---

[6]    The amounts for the Phone Stipend and Relocation Expenses are included in the amounts requested on account of postpetition wages and salaries noted in paragraph 18 hereof. The amounts sought on account of Reimbursable Expenses are limited to the costs and fees for Concur's administrative services and Reimbursable Expenses exclusive of the Phone Stipend and Relocation Expenses.

Debtors believe that approximately $10,500 remains owing to Concur in respect of prepetition costs and fees for administrative services.

31.     Certain prepetition Reimbursable Expenses may not have been paid as of the Petition Date because, among other reasons, Employees have not yet submitted a request for reimbursement or an approval of an expense request was still pending.  As a result of the lag time between when expenses are incurred and when they are submitted for reimbursement, it is difficult for the Debtors to determine with precision the actual amount of incurred but not reported Reimbursable Expenses as of any particular time.  The average aggregate monthly amount expended by the Debtors for Reimbursable Expenses is approximately $30,000. The Debtors estimate that, as of the Petition Date, approximately $45,000 will be due and owing to Employees on account of Reimbursable Expenses, $30,000 of which will be due within the Interim Period.

32.     Accordingly, the Debtors requests authority, but not direction, to pay $55,500 on account of prepetition Reimbursable Expenses, including such amounts due and owing to Concur, of which $40,500 will be due within the Interim Period.

33.     The Debtors seek authority, but not direction, to pay all outstanding prepetition Reimbursable Expenses and amounts due and owing to Concur, and to continue their expense reimbursement policy in the ordinary course of business and subject to the Debtors' discretion and applicable restrictions under the Debtors' Official Policies.

## IV.     Employee Medical and Insurance Benefits

34.     In the ordinary course of business, the Debtors have established standard and customary plans and policies to provide eligible Employees with (a) health insurance benefits, including medical, dental, and vision benefits, and (b) other insurance benefits, including life insurance, short-term disability, supplemental short-term disability, accident, hospital, and lump sum critical illness insurance (collectively, the "Medical and Insurance Benefits").

35.     The Debtors utilize Lumity, Inc. ("<u>Lumity</u>") as their administrator for all Medical and Insurance Benefits in the United States.  The Debtors pay Lumity approximately $23,000 per month for these administrative services.  As of the Petition Date, the Debtors believe that approximately $45,000 remains owing to Lumity in respect of prepetition costs and fees for administrative services, all of which will be due within the Interim Period.

36.     In addition, the Debtors use the brokerage services of ProCo Insurance ("<u>ProCo</u>," and together with Lumity and Concur, the "<u>Service Providers</u>") in connection with the management and maintenance of their Health Plan.  The Debtors do not pay ProCo directly, as ProCo is paid commission from the Medical Insurance Providers for these brokerage services. As of the Petition Date, the Debtors believe that no amounts are owing to ProCo in respect of prepetition costs and fees for these brokerage services.

   a.     **Health Insurance Benefits**

37.     The Debtors offer eligible Employees and their dependents the opportunity to obtain basic medical insurance under four (4) types of medical plans or programs of benefits provided by Aetna and Kaiser Permanente (the "<u>Medical Insurance Providers</u>," and such plans, collectively, the "<u>Medical Plans</u>").  The Debtors pay an average of approximately $1,200,000 per month to the Medical Insurance Providers for premiums and administration fees on account of the Medical Plans.

38.     The Debtors also offer a dental plan (the "<u>Dental Plan</u>") administered by Delta Dental ("<u>Delta</u>").  The Debtors pay an average of approximately $90,000 per month to Delta for premiums on account of the Delta Plan.

39.     Further, the Debtors offer a vision plan (the "<u>Vision Plan</u>", and collectively with the Medical Plans and Dental Plan, the "<u>Health Insurance Plans</u>") administered by VSP Vision

Care ("VSP"). The Debtors pay an average of approximately $10,000 per month to VSP for premiums and administration fees on account of the Vision Plan.

40. Each of the Health Insurance Plans is important to the maintenance of Employee welfare and morale and is therefore critical to the uninterrupted operation of the Debtors' business. The Debtors therefore request authority, but not direction, to continue to pay benefits and administrative costs under the Health Insurance Plans and to continue their practices related to these plans in the ordinary course of business. As of the Petition Date, the Debtors owe Lumity, Delta, and VSP approximately $2,600,000 on account of the Health Insurance Plans, $1,300,000 of which will come due in the Interim Period.

**b.  Additional Insurance Benefits**

41. The Debtors provide life and accidental death and dismemberment insurance for Employees as well as spouses or domestic partners of Employees (collectively, the "Life and AD&D Plans"). Insurance under the Debtors' Life and AD&D Plans is provided by the Hartford. Premiums for the Life and AD&D Plans are included in the total premiums paid to the Medical Insurance Providers for the Medical Plans.

42. The Debtors request authority, but not direction, to pay benefits and administrative costs under the Life and AD&D Plans, and to continue to pay for the policy and continue their practices related to the Life and AD&D Plans, in the ordinary course of business. As of the Petition Date, the Debtors owe the Hartford approximately $250,000 on account of the Life and AD&D Plans and the Hartford Disability Benefits Plan (as defined below), $125,000 of which will come due in the Interim Period.

### c. Disability Benefits

43.     The Debtors also provide Employees with short-term and long-term disability benefits (collectively, the "Disability Benefits Plan").  The short-term and long-term disability benefits are provided by the Hartford ("Hartford Disability Benefits Plan").  In addition, the Debtors also have a voluntary individual disability insurance for highly paid Employees that is provided by Unum.  As of the Petition Date, the Debtors owe Unum approximately $3,000 on account of the Disability Benefits Plan, $1,500 of which will come due in the Interim Period.

44.     The Debtors request authority, but not direction, to pay benefits and administrative costs under the Disability Benefits Plan and to continue to pay for the policy and continue their practices related to the Disability Benefits Plan in the ordinary course of business.

### d. Business Travel Accident Benefits

45.     The Debtors also provide Employees with business travel accident benefits (collectively, the "Business Travel Accident Benefits").  The Business Travel Accident Benefits are provided by the Hanover Insurance Group, Inc. ("Hanover").  As of the Petition Date, the Debtors do not believe they owe Hanover any amounts on account of the Business Travel Accident Benefits.  The Debtors request authority, but not direction, to pay benefits and any administrative costs under the Business Travel Accident Benefits and to continue to pay for the policy and continue their practices related to the Business Travel Accident Benefits in the ordinary course of business.

### e. Workers' Compensation Insurance

46.     The Debtors also provide workers' compensation insurance (the "Workers' Compensation Plan") provided by PMA Companies.  On average, the Debtors pay approximately $175,000 per month under the Workers' Compensation Plan.  As of the Petition Date, the Debtors

owe approximately $350,000 on account of the Workers' Compensation Plan, $175,500 of which will come due in the Interim Period.

47.     It is critical that the Debtors be permitted to continue their Workers' Compensation Plan and to pay outstanding prepetition claims, taxes, charges, assessments, premiums, and third-party administrator fees in the ordinary course of business because alternative arrangements for workers' compensation coverage would most certainly be more costly, and the failure to provide coverage may subject the Debtors and/or their officers to severe penalties.

48.     The Debtors request authority, but not direction, to continue to pay for the policy and continue their practices related to the Workers' Compensation Plan in the ordinary course of business. Moreover, out of an abundance of caution, and to facilitate the ordinary course handling of workers' compensation claims, the Debtors further request authority, in their sole discretion, to lift the automatic stay arising under section 362 of the Bankruptcy Code to allow workers' compensation claimants to proceed with their claims under the applicable insurance policy or program and to allow the Debtors or their insurance providers and/or third party administrators to negotiate, settle, and/or litigate workers' compensation claims, and pay resulting amounts, whether such claims arose before or after the Petition Date.

**f.      Flexible Spending Account and Health Savings Account**

49.     Employees may enroll in a flexible spending account (a "FSA") and/or a health savings account (a "HSA"), administered by Wex Inc. ("Wex"). Under the terms of the FSA and HSA, during the annual enrollment period, Employees may choose to designate a portion of their pre-tax wages or salary towards an FSA and/or HSA up to the maximum amount permitted by the Internal Revenue Service (the "IRS"), which they can then use for eligible health care expenses.

50.     The Debtors remit approximately $2,500 per month to Wex on account of the FSA and HSA—including amounts deducted from Employee pay checks, employer contributions, and administrative fees—as well as the COBRA Program (as defined below) and Commuter Benefits Program (as defined below).

51.     As of the Petition Date, the Debtors estimate that they are responsible for remitting approximately $5,000 related to the FSA, HSA, COBRA Program, and Commuter Benefits Program, $2,500 of which will become due during the Interim Period.  The Debtors seek authority, but not direction, to continue to pay these fees as they come due in the ordinary course of business.

**g.     COBRA**

52.     Under COBRA, Employees who are terminated have the right to continue health benefits from their employer for a limited period of time and under certain circumstances. The Debtors provide COBRA benefits to exiting Employees as required by law.  The Debtors' COBRA program (the "<u>COBRA Program</u>") is administered by Wex. Upon termination of an Employee qualified for COBRA coverage, the Debtors inform Wex, Wex then notifies the terminated Employee of his or her rights, determines if he or she wishes to continue coverage, collects COBRA premiums from the terminated Employee and remits them to the Debtors, and furnishes the Debtors with reports of its activities.  The Debtors seek authority, but not direction, to continue providing COBRA benefits in the ordinary course.

**V.     Work/Life Benefits**

53.     The Debtors offer Employees the opportunity to participant in a number of ancillary benefit programs (collectively, the "<u>Work/Life Benefits Programs</u>"), including (i) the Employee Assistance Program (the "<u>EAP</u>"), and (ii) the Commuter Benefits Program (as defined below).  By this Motion, the Debtors seek authority, but not direction, to pay all obligations in connection with the Work/Life Benefits Programs in the ordinary course of business, including all prepetition

amounts on account of such obligations, and to continue to administer the Work/Life Benefits Program in the ordinary course of business.

54.     *EAP*.  The Debtors offer their Employees and their family members assistance to help resolve personal issues through the EAP.  The EAP has been funded at an average monthly cost to the Debtors of $3,000.  As of the Petition Date, the Debtors estimate that they are responsible for remitting approximately $6,000 related to the EAP, $3,500 of which will become due during the Interim Period.  The Debtors request authority, but not direction, to pay those amounts on account of EAP postpetition and to continue paying postpetition costs of the EAP in the ordinary course of business during the pendency of these Chapter 11 Cases.

55.     *Commuter Benefits Program*.  The Debtors offer Employees the opportunity to purchase transit passes and pay for certain parking expenses with pre-tax contributions (the "Commuter Benefits Program").  Under the Commuter Benefits Program, a portion of Employees' wages is withheld and contributed into accounts on a pre-tax basis.  Employees then utilize the proceeds of such accounts to purchase transit passes and pay for certain parking expenses.  The Commuter Benefits Program is administered by Wex.  The Debtors also seek authority, but not direction, to remit to the accounts all withheld in the ordinary course of business.

## VI.     401(k) Savings Plan

56.     The Debtors also maintain a 401(k) Savings Plan for Employees (the "Savings Plan") administered by ADP.  Under the Savings Plan, the Debtors' eligible Employees have the option of contributing on a pre-tax basis to a traditional 401(k).  Eligible Employees may elect to contribute up to the annual IRS dollar limit (which varies annually) to the Savings Plan. The Debtors do not match Employee contributions to the Savings Plan.  The Debtors requests authority, but not direction, to continue to honor their obligations under the Savings Plan.

## RELIEF REQUESTED

57.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing, but not directing, the Debtors to (a) pay all prepetition wages, salaries, other compensation, and reimbursable expenses on account of the Employee Programs in an aggregate amount not to exceed $9,448,000 on an interim basis, and in an aggregate amount not to exceed $13,819,500 on a final basis; and (b) otherwise honor and continue (but not assume) the Employee Programs in the ordinary course of business until further notice.  For the reasons set forth herein, the Debtors submits that the relief requested is in the best interest of the Debtors, their estates, creditors and other parties in interest, and therefore, should be granted.

## BASIS FOR RELIEF

**I.      Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Programs**

    **a.      Certain Employee Programs Are Entitled to Priority Treatment**

58.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Employee Programs owed to the Employees to priority treatment, to the extent such payments do not exceed $15,150 for each individual as provided for under sections 507(a)(4) and (5) of the Bankruptcy Code.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment in full of certain allowed unsecured claims for (a) wages, salaries, or commissions, including severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  Thus, granting the relief requested herein should only affect the timing of certain payments to the Employees, and should not negatively affect recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Employee Programs at this time enhances value for the benefit of all interested parties.

### b.  Payment of Certain Employee Programs Is Required by Law

59.     The Debtors seek authority, but not direction, to pay the Withholding Obligations

to the appropriate third-party entities.  These amounts principally represent Employee earnings

that governments, Employees, and judicial authorities have designated for deduction from the

Employees' paychecks.  Indeed, certain Withholding Obligations are not property of the Debtors'

estates because the Debtors have withheld such amounts from the Employees' paychecks on

another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Furthermore, federal and state laws

require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay

such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of

Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a

corporate debtor to withhold city income tax from its employees' wages created a trust relationship

between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852

F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally

liable for failure to pay trust fund taxes).  Because the Withholding Obligations may not be

property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the

Withholding Obligations on account of the Employees to the proper parties in the ordinary course

of business.  *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998).  The Debtors therefore

respectfully request that the Court recognize that the Withholding Obligations are not property of

the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the

Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary

course of business.

60.     Similarly, state laws require the Debtors to maintain the Workers' Compensation

Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may

prohibit the Debtors from operating in those states. Payment of all Workers' Compensation Program amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' restructuring. The Debtors therefore request that the Court authorize the Debtors to maintain the Workers' Compensation Program.

## II.    Payment of the Employee Programs Is a Proper Exercise of the Debtors' Business Judgment

61.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

62.    Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr.

D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

63.    Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 825-26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Railway Co.*, 657 F.2d 570 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. at 497.

64.     Payment of the Employee Obligations is warranted under this authority and the facts of these Chapter 11 Cases.  The Debtors' Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Obligations.  Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these Chapter 11 Cases on the Debtors' ongoing business operations.

65.     Moreover, the Workforce provides the Debtors with services necessary to conduct the Debtors' businesses, and the Debtors believe that absent the payment of the Employee Obligations owed to, or on the account of, the Workforce, the Debtors may experience Workforce turnover and instability at this critical time in these chapter 11 cases.  The Debtors believe that without these payments, the Workforce may become demoralized and unproductive because of the potential significant financial strain and other hardships the Workforce may face.  Such members of the Workforce may then elect to seek alternative employment opportunities.  Additionally, a significant portion of the value of the Debtors' businesses is tied to their Workforce, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang of these chapter 11 cases.  Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario.  The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Programs is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these Chapter 11 Cases and conduct a sale process.

66.     Finally, payment of the Payroll Processing Fees and the other Service Provider fees is necessary. Without the continued services of ADP and the Service Providers, the Debtors would

be unable to continue to honor their obligations to Employees in an efficient and cost-effective manner and maintain their Employee base, both of which are critical to the smooth functioning of the Debtors' operations.

67.     Moreover, courts in this district have granted similar relief to that requested in this Motion in previous chapter 11 cases. *See, e.g.*, *In re Highpoint Res. Corp.,* No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (authorizing debtors to pay prepetition employee wages and obligations in the ordinary course of business); *In re Renovate America, Inc.*, No. 20-13172 (LSS) (Bankr. D. Del. Jan. 22, 2021) (same); *In re BC Hospitality Grp. Inc.*, No. 20-13103 (BLS) (Bankr. D. Del. Jan. 5, 2021) (same); *In re Rubio's Restaurants, Inc.*, No. 20-12688 (MFW) (Bankr. D. Del. Nov. 18, 2020) (same).  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Programs in the ordinary course of business and consistent with past practice.

## III.     Continuation of the Employee Incentive Program Does Not Implicate Section 503(c) of the Bankruptcy Code

68.     By this Motion, the Debtors seek authority, but not direction, to continue the Employee Incentive Program to the extent requested herein and to honor obligations that arise after the Petition Date exclusively for non-Insider Employees.

69.     The Employee Incentive Program does not implicate sections 503(c)(1) or 503(c)(2) of the Bankruptcy Code because no payments thereunder will be made to any Insider. *See* 11 U.S.C. § 503(c)(1)–(2). Compensation plans commenced within the ordinary course of business that do not implicate section 503(c)(1) are governed by the business judgment standard of section 363 of the Bankruptcy Code. *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 801 (Bankr. D. Del. 2007). Additionally, the Employee Incentive Program does not implicate section 503(c)(3) of the Bankruptcy Code because it is within the ordinary course of the Debtors' business.

*Cf.* 11 U.S.C. § 503(c)(3) (prohibiting certain payments "outside of the ordinary course of business"). If section 503(c) of the Bankruptcy Code is not implicated, the Court may grant the requested relief if it finds that the Employee Incentive Program satisfies the requirements of section 363(b) of the Bankruptcy Code. *See In re Mesa Air Group, Inc.*, Ch. 11 Case No. 10-10018 (MG), 2010 WL 3810899, at *3 (Bankr. S.D.N.Y. Sept. 24, 2010) (noting that compensation plans commenced within the ordinary course of business are governed by section 363 of the Bankruptcy Code, not section 503(c)).

## IV.     A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here

70.     Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1). Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1). Cause exists here to modify the automatic stay to permit Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum. Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

71.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor in possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire

transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**IMMEDIATE RELIEF IS NECESSARY TO**
**AVOID IMMEDIATE AND IRREPARABLE HARM**

72.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

73.    To the extent that Bankruptcy Rule 6004(a) applies, the Debtors respectfully request a waiver of such notice requirement in order to successfully implement the foregoing requested relief.

74. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seeks in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

75. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the interim or final orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

76.     The Debtors have provided notice of this motion to the following parties or their respective counsel: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) Gibson Dunn & Crutcher LLP, and Pachulski, Stang, Ziehl & Jones LLP, as counsel to the DIP Lender; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) the United States Attorney's Office for the District of Delaware and all other states in which the Debtors operate; (vii) ADP; (viii) the Service Providers; and (ix) all other parties entitled to notice pursuant to Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

77.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

*[Signature Page Follows]*

Dated: June 30, 2022          Respectfully submitted,
       Wilmington, Delaware

*/s/ Daniel J. DeFranceschi*
Daniel J. DeFranceschi, Esq. (No. 2732)
Paul N. Heath, Esq. (No. 3704)
Brendan J. Schlauch, Esq. (No. 6115
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701
Email:  defranceschi@rlf.com
          heath@rlf.com
          schlauch@rlf.com

-and-

Cullen Drescher Speckhart, Esq.
Weiru Fang, Esq.
**COOLEY LLP**
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899
Email:  cspeckhart@cooley.com
          wfang@cooley.com

-and-

Michael A. Klein, Esq.
Evan Lazerowitz, Esq.
Joseph W. Brown, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile:  (212) 479-6275
Email:  mklein@cooley.com
          elazerowitz@cooley.com
          jbrown@cooley.com

*Proposed Counsel for the Debtors*

# EXHIBIT A

## Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENJOY TECHNOLOGY, INC., *et al.*, | ) | Case No. 22-_____ (___) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, (II) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"), pursuant to Bankruptcy Code sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rules 6003 and 6004 (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages and salaries, other compensation, and reimbursable expenses, and (b) continue certain employee benefit programs in the ordinary course, (ii) authorizing all banks to honor prepetition checks for payment of prepetition Employee Obligations, and (iii) granting other related relief; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis to the extent set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____ at __:__ a.m./p.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court **by no later than 4:00 p.m., prevailing Eastern Time, on** _____ and be served upon: (i) proposed counsel to the Debtors, Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen D. Speckhart (cspeckhart@cooley.com) and Weiru Fang (wfang@cooley.com), and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein (mklein@cooley.com), Evan Lazerowitz (elazerowitz@cooley.com), and Joseph W. Brown (jbrown@cooley.com)); (ii) proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), and Brendan J. Schlauch (schlauch@rlf.com)); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov)); (iv) Gibson Dunn & Crutcher LLP, as counsel to the DIP Lender (Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Matthew J. Williams

(mjwilliams@gibsondunn.com), and Michael S. Neumeister (mneumeister@gibsondunn.com));
(v) Pachulski Stang Ziehl & Jones LLP, as co-counsel to the DIP Lender (Attn: Laura Davis Jones
(ljones@pszjlaw.com)); and (vi) counsel to any statutory committee that has been appointed in the
Chapter 11 Cases.

3.      The Debtors are authorized, but not directed, to continue and/or modify, change,
and discontinue the Employee Programs and to implement new programs, policies, and benefits,
in the ordinary course of business during these Chapter 11 Cases and without the need for further
Court approval, subject to applicable law.  For the avoidance of doubt, except as otherwise
expressly set forth herein, nothing in this Interim Order should be construed as authorizing the
Debtors to: (i) pay any amounts to Insiders on account of any bonus or incentive programs; or
(ii) make any payment on account of the Employee Programs that are outside the ordinary course
of business without prior Court approval.

4.      The Debtors are authorized, but not directed, to pay and/or honor (including to any
third parties that provide or aid in the monitoring, processing or administration of the Employee
Programs), in their discretion, obligations on account of the prepetition Employee Programs, as
and when such obligations are due and consistent with the Debtors' ordinary course of business in
an aggregate amount not to exceed $9,448,000 without further order of the Court, as follows:

| Employee Obligations | Interim Amount |
|---|---|
| **I. Wages, Salaries, and Related Payroll Taxes** | |
| a. Employee Wages and Salaries | $3,200,000 |
| b. Social Security, Income Taxes and Other Withholdings | $1,700,000 |
| b. Supplemental Workforce Wages | $2,100,000 |
| c. Employee Incentive Program | $700,000 |
| e. Payroll Processor Fees | $55,000 |
| **II. Paid Time Off and Expense Reimbursements** | |
| a. Accrued Paid Time Off | Final Basis Only |

| | |
|---|---|
| b. Expense Reimbursement | $40,500 |
| **III. Medical and Insurance Benefits** | |
| a. Health Insurance Benefits | $1,345,000 |
| b. Additional Insurance Benefits | $125,000 |
| c. Disability Benefits | $1,500 |
| d. Business Travel Accident Benefits | $0 |
| e. Workers' Compensation Insurance | $175,000 |
| f. Flexible Spending Account and Health Savings Account | $2,500 |
| g. COBRA | $0 |
| **IV. Work/Life Benefits** | $3,500 |
| **V. 401(k) Retirement Plan** | $0 |
| **Total:** | **$9,448,000** |

5.     Notwithstanding any other provision of this Order, no payments to any individual Employee or Supplemental Workforce shall exceed the amounts set forth in 11 U.S.C. sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, except upon further order of this Court.

6.     Nothing herein shall be deemed to (i) authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; or (ii) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an Employee or Supplemental Workforce, unless applicable state law requires such payment.

7.     The Debtors are authorized, but not directed, in their discretion to pay any and all Withholdings, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding and other types of withholding, whether these relate to the period prior to Petition Date or subsequent thereto.

8.     The Debtors are authorized, but not directed, in their discretion, to pay all processing fees associated with, and all costs incident to, the foregoing, including Payroll Processor Fees and amounts due and owing to the Service Providers.

9.     Pursuant to section 362(d) of the Bankruptcy Code, (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business, and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program, and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

11.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.     Notwithstanding anything contained in the Motion or this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing,*

*(B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, and (E) Modifying the Automatic Stay, and (F) Granting Related* Relief (the "<u>Interim DIP Order</u>," and together with the final order granting similar relief, the "<u>DIP Orders</u>").  To the extent there is any inconsistency between the DIP Orders, the Motion, or the Interim Order, the terms of the DIP Orders shall control.

13.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

14.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the interim relief requested is necessary to avoid immediate and irreparable harm.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# EXHIBIT B

## Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENJOY TECHNOLOGY, INC., *et al.*,[1] | ) Case No. 22-_____ (___) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, (II) AUTHORIZING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order"), pursuant to Bankruptcy Code sections 105(a), 363, 507(a), 541, 1107(a) and 1108 and Bankruptcy Rules 6003 and 6004 (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages and salaries, other compensation, and reimbursable expenses and (b) continue certain employee benefit programs in the ordinary course, (ii) authorizing all banks to honor prepetition checks for payment of prepetition Employee Obligations, and (iii) granting other related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      Any objections to the Motion not resolved or otherwise withdrawn are OVERRULED.

3.      The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Programs and to implement new programs, policies, and benefits, in the ordinary course of business during these Chapter 11 Cases and without the need for further Court approval, subject to applicable law.  For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Final Order should be construed as authorizing the Debtors to: (i) pay any amounts to insiders on account of any bonus or incentive programs; or (ii) make any payment on account of the Employee Programs that are outside the ordinary course of business without prior Court approval.

4.      The Debtors are authorized, but not directed, to pay and/or honor (including to any third parties that provide or aid in the monitoring, processing or administration of the Employee Programs), in their discretion, obligations on account of the prepetition Employee Programs, as and when such obligations are due and consistent with the Debtors' ordinary course of business in an aggregate amount not to exceed $13,819,500 without further order of the Court as follows:

| Employee Obligations | Final Amount |
|---|---|
| **I. Wages, Salaries, and Related Payroll Taxes** | |
| a. Employee Wages and Salaries | $3,200,000 |
| b. Social Security, Income Taxes and Other Withholdings | $2,900,000 |
| b. Supplemental Workforce Wages | $2,100,000 |
| c. Employee Incentive Program | $700,000 |
| e. Payroll Processor Fees | $55,000 |
| **II. Paid Time Off and Expense Reimbursements** | |
| a. Accrued Paid Time Off | $1,550,000 |
| b. Expense Reimbursement | $55,500 |
| **III. Medical and Insurance Benefits** | |
| a. Health Insurance Benefits | $2,645,000 |
| b. Additional Insurance Benefits | $250,000 |
| c. Disability Benefits | $3,000 |
| d. Business Travel Accident Benefits | $0 |
| e. Workers' Compensation Insurance | $350,000 |
| f. Flexible Spending Account and Health Savings Account | $5,000 |
| g. COBRA | $0 |
| **IV. Work/Life Benefits** | $6,000 |
| **V. 401(k) Retirement Plan** | $0 |
| **Total:** | **$13,819,500** |

5.     Notwithstanding any other provision of this Order, no payments to any individual Employee or Supplemental Workforce shall exceed the amounts set forth in 11 U.S.C. sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, except upon further order of this Court.

6.     Nothing herein shall be deemed to (i) authorize the payment of any amounts in satisfaction of bonus or severance obligations, or which are subject to section 503(c) of the Bankruptcy Code; or (ii) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an Employee or Supplemental Workforce, unless applicable state law requires such payment.

7.     The Debtors are authorized, but not directed, in their discretion to pay any and all Withholdings, including social security, FICA, federal and state income taxes, garnishments,

health care payments, retirement fund withholding and other types of withholding, whether these relate to the period prior to Petition Date or subsequent thereto.

8.      The Debtors are authorized, but not directed, in their discretion, to pay all processing fees associated with, and all costs incident to, the foregoing, including Payroll Processor Fees and amounts due and owing to the Service Providers.

9.      Pursuant to section 362(d) of the Bankruptcy Code, (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business, and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program, and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

10.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

11.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

12.     Notwithstanding anything contained in the Motion or this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, and (E) Modifying the Automatic Stay, and (F) Granting Related* Relief (the "<u>Interim DIP Order</u>," and together with the final order granting similar relief, the "<u>DIP Orders</u>").  To the extent there is any inconsistency between the DIP Orders, the Motion, or the Final Order, the terms of the DIP Orders shall control.

13.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.