# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENJOY TECHNOLOGY, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10580 (JKS)<br><br>(Jointly Administered)<br><br>**RE: Docket Item Nos. 11 & 86** |

**COMBINED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE (1) MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE SENIOR SECURED LENDER, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF [D.I. 11]; AND (2) MOTION OF DEBTORS FOR ENTRY OF (I) AN ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING MANNER OF NOTICE THEREOF, AND (D) SCHEDULING A HEARING TO APPROVE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS; AND (II) AN ORDER (A) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT; AND (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; AND (III) AN ORDER APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS; AND (IV) GRANTING RELATED RELIEF [D.I. 86]**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its undersigned proposed counsel, hereby files this combined objection (the "Objection") to the following:

(1) *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

*Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Senior Secured Lender, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Motion") [D.I. 11]; and

(2) *Motion of Debtors for Entry of an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of all or Substantially all of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of Notice Thereof, and (D) Scheduling a Hearing to Approve Assumption and Assignment of the Assumed Contracts* (the "Bidding Procedures Motion")[2] [D.I. 86]

In support of its Objection, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. As of the filing of this Objection, the Committee has been in existence for only eight (8) days, and the Committee's proposed counsel and financial advisor, have been engaged for only five (5) and six (6) days, respectively. By contrast, many of the Debtors' professionals have been involved in these matters for months. Against this backdrop, and for the reasons discussed herein, the Committee objects to the DIP Motion and the Bidding Procedures Motion because the terms, including proposed DIP milestones and sale timeline, are overly aggressive and potentially prejudicial to the estates, especially because an asset purchase agreement ("APA") is still being negotiated, and the Committee has not received a draft of a DIP Credit Agreement.

2. It is no secret that the success of these chapter 11 cases hinges on the sale of the Debtors' assets. Indeed, the Debtors have advertised the expectation of a sale that pays creditors in full. However, the Debtors have yet to finalize an APA, and the delay associated with ongoing contract negotiations has further diminished the timeline for any type of competitive bidding process. In the meantime, the Debtors seek approval of a final DIP Order and bidding procedures

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Motion, Interim DIP Order, or the Bidding Procedures Motion, as applicable.

that serve to advance the DIP Lender's loan-to-own strategy to the potential detriment of creditors. In short, the APA must be finalized and the Court, the Committee, and other parties in interest must have a reasonable opportunity to review it before the Bidding Procedures can be approved. It is premature to seek bidding protections and set critical case milestones when the most critical first step of the process has not been completed.

3. The Committee requests that the Court adjourn the DIP Motion and the Bidding Procedures Motion until after the stalking horse APA is signed and filed with the Court. This adjournment will permit the Committee to engage in a meaningful dialogue with the Debtors and the DIP Lender regarding the relief requested in the DIP Motion and the Bidding Procedures Motion and, hopefully, reach a consensus on, among other major issues, the proposed case milestones, termination fee, and bid protections. The request for more time is not driven by a tactical desire to delay, but rather, a critical need to understand, investigate, and engage with the parties to reach a consensual resolution.

## FACTUAL BACKGROUND

**A. The Debtors' Chapter 11 Cases.**

4. On June 30, 2022 (the "Petition Date"), each of the above-captioned debtors (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These chapter 11 cases are being jointly administered.

5. On July 11, 2022, the United States Trustee (the "U.S. Trustee") appointed a committee of unsecured creditors (the "Committee") [D.I. 110]. On July 12, 2022, the Committee selected Fox Rothschild LLP as its proposed counsel. The Committee selected FTI Consulting as its proposed financial advisor the following day. The members of the Committee are: (i) Donnelly Financial, LLC, (ii) Xoriant Corporation; and (iii) Vetty, Inc.

6. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

**B. The DIP Motion.**

7. At the outset of these cases, the Debtors sought approval of debtor-in-possession financing ("DIP Financing") which authorizes the Debtors, among other things, to obtain senior secured, superpriority postpetition financing on a superpriority basis consisting of a senior secured superpriority asset based credit facility (the "DIP Facility") and all amounts extended under the DIP Facility, consisting of $55.0 million in the aggregate principal amount of loans and commitments, by and among the Borrower, the Guarantors, and the DIP Lender. The Debtors filed the Declaration of Marc D. Puntus in support of the DIP Motion [D.I. 12].

8. On July 1, 2022, the Court entered the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Senior Secured Lender, (E) Modifying Automatic Stay, and (F) Granting Related Relief* (the "Interim DIP Order") [D.I. 83].

9. The Court is scheduled to consider a final order approving the DIP Financing (the "Final DIP Order") on July 21, 2022 at 3:30 P.M. (EST).

10. Objections or responses to entry of the Final Order were due to be filed no later than July 14, 2022 at 4:00 P.M. (EST) (the "DIP Objection Deadline"). However, by way of agreement with the Debtors, the Debtors extended the DIP Objection Deadline for the Committee through and including July 18, 2022 at 4:00 p.m. (EST).

11. The Final DIP Order proposes to condition the DIP Financing on the Debtors' achievement of certain milestones (the "DIP Milestones")[3] throughout the chapter 11 cases, including, but not limited to: (i) no later than 14 calendar days after the Petition Date, the Debtors shall file with the Bankruptcy Court a stalking horse APA for the Acquired Assts with the DIP Lender; (ii) no later than 17 calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bid Procedures Order; (iii) no later than twenty-one (21) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final DIP Order; (iv) no later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered one or more final, non-appealable sale order(s) (which shall be in form and substance reasonably acceptable to the DIP Lender) approving each of the winning bid(s) resulting from the auction (the "Sale Order"); and (v) no later than sixty (60) calendar days after the Petition Date, the Asset Sale Effective Date (as defined in the Bid Procedures Order) shall have occurred.

**C.    The Bidding Procedures Motion.**

12. Shortly after the Petition Date, on July 3, 2022, the Debtors filed the Bidding Procedures Motion [D.I. 86].

13. On July 5, 2022, the Court entered the *Order Shortening the Notice and Objection Periods for the Debtors' Bidding Procedures Motion* [D.I. 91] (the "Shortening Order") scheduling a hearing (the "Hearing") to consider the relief requested in the Motion for July 18, 2022 at 11:30 a.m. (EST). However, the Debtors and the DIP Lender agreed to reschedule the Hearing on the Bidding Procedures Motion for July 21, 2022 at 3:30 p.m. (EST) [D.I. 124].

14. The Bidding Procedures Motion requests (i) approval of the Debtors' proposed auction and bidding procedures in connection with the Sale of substantially all of the Debtors'

---

[3] Some of the DIP Milestones have been extended by agreement with the DIP Lender.

assets, (ii) that the Debtors be authorized to enter into and perform under a stalking horse APA (the "Stalking Horse APA") consistent with the Bidding Procedures (subject to final Court approval) and grant Stalking Horse bid protections; (iii) that an Auction and Sale Hearing be scheduled; (iv) to establish procedures for the assumption and assignment of certain executory contracts and unexpired leases and (v) scheduling a hearing to authorize and approve the assumption and assignment of Assumed Contracts in connection with the Sale. The Bidding Procedures Motion also requests the entry of a Sale Order.

15. Objections to the Bidding Procedures Motion were due to be filed no later than July 15, 2022 at 4:00 p.m. (ET) (the "Bidding Procedures Objection Deadline"). By agreement, the Debtors extended the Bidding Procedures Objection Deadline for the Committee through and including July 18, 2022 at 4:00 p.m. (EST).

16. The United States Trustee (the "U.S. Trustee") filed an objection ("U.S. Trustee's Objection") to the Bidding Procedures Motion [D.I. 137] objecting to the proposed bid protections.

## **OBJECTION**

**A.     The Relief Sought in the Bidding Procedures Motion and DIP Motion are Premature.**

17. As set forth at the outset of this Objection, the Committee does not object to a sale process that has the potential to result in full payment to unsecured creditors. *See e.g. Declaration of John Boken in Support of Chapter 11 Petitions and First Day Motions (the "Boken Declaration") at ¶ 46*. ("The Debtors anticipate that the proposed purchase price to be received from Asurion will be sufficient to satisfy all secured and unsecured claims in full.") The Committee does, however, object to the DIP Motion and Bidding Procedures Motion from a timing perspective. The Committee cannot formulate a fulsome analysis regarding the terms and

conditions of the sale when, as of the date of filing this Objection, the Stalking Horse APA and DIP Credit Agreement have not been finalized.

18. The relief sought in the Bidding Procedures Motion is premature, and the Committee echoes the U.S. Trustee's remarks. *See e.g.* U.S. Trustee Objection at ¶ 22 ("In this case, there is no present stalking horse, so any benefit a stalking horse could provide to the Debtors' estates cannot be determined. Taking up bid protections (or the process for awarding them) before a bid is even in hand, is premature."). The U.S. Trustee's Objection focuses on whether Asurion is entitled to bid protections. The Committee agrees with the U.S. Trustee's conclusions and analyses, but through this Objection, the Committee wishes to expand upon the U.S. Trustee's Objection, by opposing the DIP Motion *and* the Bidding Procedures Motion. Not only are the specific bid protections problematic, but the milestones, as proposed, are flawed. The Debtors have not finalized the Stalking Horse APA and have not entered into a DIP Credit Agreement – these are critical in order for the sale to move forward. The process must be delayed until a Stalking Horse APA is finalized. The Committee has provided the Debtors with informal comments to the Final DIP Order and the Bidding Procedures, however, the Committee files this Objection out of an abundance of caution and for the Court's consideration.

**B.      The Proposed DIP Lender Fees are Excessive.**

19. The Interim DIP Order provides that the DIP Lender is entitled to: "(i) *a closing fee of 2.00%* of the total aggregate commitments in respect of the DIP Facility, which is deemed earned upon entry of this Interim Order, (the "Commitment Fee"), which Commitment Fee shall be added to the outstanding principal amount of the DIP Loans and thereafter constitute principal for all purposes and accrue interest in accordance with the DIP Term Sheet, (ii*) a termination fee of 4.0%* of the Repaid Amount (as defined in the DIP Term Sheet) upon the DIP Termination Date

(as defined in the DIP Term Sheet) (the "Termination Fee" [and together with the Commitment Fee, the "DIP Lender Fees")], and (iii) all reasonable and documented costs and expenses as may become due from time to time under the DIP Term Sheet and this Interim Order, including, without limitation, fees and expenses of counsel, financial advisors, and other professionals retained by the DIP Lender, as provided for in the DIP Term Sheet and this Interim Order…" *See* Interim DIP Order at ¶ 2(c)(iii) (emphasis added).

20. The Committee believes that the DIP Lender Fees totaling 6% are excessive based on the fees approved by courts in other cases, and particularly considering that the DIP Lender Fees would be paid fees on a portion of the DIP Loans that are expected to be credit bid by the DIP Lender. The Committee submits that the Termination Fee should be eliminated or significantly reduced and conditioned on a Stalking Horse Bid that provides for payment of creditors in full.

21. Additionally, the DIP Lender would be entitled to reimbursement of its reasonable fees and expenses, but any reasonableness review would be based solely upon summary fee statements. The Committee submits that the DIP Lender should be required to provide detailed billing statements/invoices, particularly considering that the DIP Lender may also be entitled to reimbursement of certain sale-related fees and expenses pursuant to the proposed Bidding Procedures. The Committee and other parties in interest are entitled to greater visibility and opportunity to review the DIP Lender's invoices for reasonableness and to differentiate sale-related fees and expenses.

C. **The DIP Loan Should not be Approved Without a Wind-Down Budget.**

22. Based on the Committee's review of the Debtors' budget, the Debtors have not proposed a wind-down budget (the "Wind-Down Budget"). The Committee asserts that it is

essential to have a Wind-Down Budget, or at a minimum, a line item in the Final DIP Order and budget, reserving funds to assist in the wind-down of the Debtors' business after the sale. At this juncture, there is uncertainty with respect to the final terms Stalking Horse APA and the post-sale process. In order for the Committee to make an informed decision as to whether unsecured creditors will be protected and guaranteed full recovery, visibility into the Debtors' anticipated wind-down expenses is critical.

D. **The DIP Lender Should Not Receive Liens on Avoidance Action Proceeds.**

23. The DIP Lender should not be granted any liens on avoidance actions since such relief is fundamentally at odds with the unique purposes served by avoidance actions. Avoidance actions and their proceeds are distinct creatures of bankruptcy law designed to benefit to general unsecured creditors and therefore should not be encumbered for the benefit of secured creditors. *See Official Comm. of Unsecured Creditors v. Chinery* (*In re Cybergenics Corp.*), 330 F.3d 548, 573 (3d Cir. 2000) (finding "avoidance actions are designed to protect" the interests of "unsecured creditors"). Accordingly, courts have restricted the pledge of avoidance actions and proceeds as collateral. *See id.*; *see also Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm L.P. IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("[A]ny recovery [under avoidance powers] is for the benefit of all unsecured creditors, including those who individually had no right to avoid the transfer."); *McFarland v. Leyh* (*In re Tex. Gen. Petrol. Corp.*), 52 F.3d 1330, 1335–36 (5th Cir. 1995) ("[T]he proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits. . . . The proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors."). The Debtors have provided no legal basis to grant the DIP Lender a lien on the

proceeds of avoidance actions and therefore, such liens should be wholly excluded from the DIP Collateral and reserved for the benefit of the Debtors' unsecured creditors.

## **RESERVATION OF RIGHTS**

24. This Objection is without prejudice to, and the Committee hereby fully reserves, its right to raise additional arguments with respect to the DIP Financing, Bidding Procedures, and DIP Motion, This Objection is also without prejudice to the Committee's right to seek other appropriate relief, including reconsideration of the relief granted in the Interim DIP Order.

## **CONCLUSION**

25. WHEREFORE, the Committee respectfully requests that the Court (i) enter an order delaying the approval of the proposed DIP Financing on a final basis, (ii) enter an order delaying the implementation of the Bidding Procedures until the Stalking Horse APA is finalized; and (iii) granting such other and further relief as the Court deems just.

Dated: July 18, 2022
Wilmington, Delaware      **FOX ROTHSCHILD LLP**

/s/ *Howard A. Cohen*
Howard A. Cohen (DE 4082)
Stephanie J. Slater (DE 6922)
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
Email: hcohen@foxrothschild.com
Email: sslater@foxrothschild.com

-and-

Jeffrey L. Widman (admitted *pro hac vice*)
Gordon E. Gouveia (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
Facsimile: (312) 517-9201
Email: jwidman@foxrothschild.com
Email: ggouveia@foxrothschild.com

*Proposed Counsel to the*
*Official Committee of Unsecured Creditors*