# **EXHIBIT A**

Revised Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENJOY TECHNOLOGY, INC., *et al.*,[1] | Case No. 22-10580 (JKS) |
| Debtors. | (Jointly Administered) |

## ORDER (I) (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING MANNER OF NOTICE THEREOF, AND (D) SCHEDULING A HEARING TO APPROVE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of the Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), an order (i) approving certain bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") for the sale of certain of the Debtors' assets (the "Sale") and form and manner of notice thereof substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"), (ii) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

Agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, (iv) establishing certain assumption and assignment procedures and approving manner of notice thereof substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice,"), and (v) scheduling a hearing to authorize and approve assumption and assignment of the Assumed Contracts; the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); and the Court having considered the statements of counsel, the Declaration of Marc D. Puntus in support of the Motion [Docket No. __], and the evidence presented at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.     The Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of the Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

B.     The Debtors have offered good and sufficient reasons for, and the best interest of its estate will be served by, this Court granting the Motion to the extent provided in this Order, including (i) approving the Bidding Procedures, attached hereto as **Exhibit 1**, and form and manner of notice thereof substantially in the form of the Sale Notice attached hereto as **Exhibit 2**, (ii) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse Agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (iii) scheduling an Auction and a Sale Hearing in connection with the Sale, (iv) establishing certain assumption and assignment procedures and approving manner of notice thereof substantially in the form of the Assumption and Assignment Notice attached hereto as **Exhibit 3**, and (v) scheduling a hearing to authorize and approve assumption and assignment of the Assumed Contracts.

C.     Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.     In accordance with Local Rules 6004-1, the Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.     The proposed Sale Notice and the Assumption and Assignment Notice, as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all

interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other or further notice shall be required for the Sale or the assumption and assignment of the Assumed Contracts.

F.      There is a compelling and sound business justification for the Debtors to (i) designate Asurion, LLC or an affiliate or assignee thereof as Stalking Horse Bidder, (ii) to enter into the Stalking Horse Agreement, subject to final Court approval at the Sale Hearing, and (iii) grant the Stalking Horse Bid Protections, in each case at any time prior to the Auction.

G.      The Bidding Procedures, including the Stalking Horse Bid Protections, were negotiated in good faith and at arms' length.

H.      The Bidding Procedures, including the Stalking Horse Bid Protections, are fair, reasonable and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

3.      The Bidding Procedures, attached as **Exhibit 1** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid Proceedings relating to the Assets.  The Debtors and their claims agent are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The Debtors are authorized to (i) designate Asurion, LLC or an affiliate or assignee thereof as Stalking Horse Bidder, (ii) to enter into the Stalking Horse Agreement, subject to final Court approval at the Sale Hearing, and (iii) grant the Stalking Horse Bid Protections, in each case

at any time prior to the Auction. The Debtors' obligation to pay the Stalking Horse Bid Protections shall constitute, pursuant to sections 503 and 507 of the Bankruptcy Code, an administrative expense claim against the Debtors' bankruptcy estate, and shall survive termination of the Stalking Horse Agreement.

5.     The deadline for submitting a Qualified Bid shall be August 8, 2022 at 10:00 a.m. (prevailing Eastern Time), unless extended by the Debtors pursuant to the Bidding Procedures (the "Bid Deadline"), provided that the Debtor, with the consent of the DIP Lender, may extend the Bid Deadline without further order of the Court.

6.     All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

7.     If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction. The Auction will take place virtually on August 9, 2022, starting at 10:00 a.m. (prevailing Eastern Time) or such other time as the Debtors, with the consent of the DIP Lender, shall designate and notify to all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, and any creditor of the Debtors that has provided notice in writing of its intent to observe the Auction at least one (1) day prior to the start of the Auction shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate, through a Zoom link that the Debtors will distribute to all such parties prior to the commencement of the Auction.

8.     Each Qualified Bidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its

Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

9.  The Auction will be conducted openly and will be transcribed, at the Debtors' option.

10. Within twenty-four (24) hours following the conclusion of the Auction, the Debtors will file a notice identifying the Successful Bidder and the Next-Highest Bidder.

11. The Court shall convene the Sale Hearing on August 12, 2022, at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) and the entry of the Sale Order. The Debtors shall file a form of Sale Order no later than fourteen (14) days before the Sale Hearing. At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s). Subject to consultation with the Consultation Parties, and with the consent of the DIP Lender, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with the Court.

12. Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before 4:00 p.m. (prevailing Eastern Time) on August 2, 2022 (prevailing Eastern Time) (the "Sale Objection Deadline") on the following parties (collectively, the "Notice Parties"):

(a) proposed counsel to the Debtors, Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen D. Speckhart (cspeckhart@cooley.com) and Weiru Fang (wfang@cooley.com), and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein (mklein@cooley.com), Evan M. Lazerowitz (elazerowitz@cooley.com), and Joseph W. Brown (jbrown@cooley.com));

(b) proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Daniel J. DeFranceschi (defranceschi@RLF.com), Paul N. Heath (heath@rlf.com), and Brendan J. Schlauch (schlauch@rlf.com));

(c) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov));

(d) Gibson Dunn & Crutcher LLP, as counsel to the DIP Lender (Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Matthew J. Williams (mjwilliams@gibsondunn.com), Michael S. Neumeister (mneumeister@gibsondunn.com));

(e) Pachulski Stang Ziehl & Jones LLP, as co-counsel to the DIP Lender (Attn: Laura Davis Jones (ljones@pszjlaw.com)); and

(f) counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

13. Objections related solely to conduct at the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Notice Parties on or before August 11, 2022, at 4:00 p.m. (ET) (the "Auction Objection Deadline").

14. Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale

and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

15.     Within three (3) business days of the entry of this Order, the Debtors will file an Assumption and Assignment Notice, substantially in the form attached as **Exhibit 3** to this Order, which shall include a schedule of cure obligations (the "Cure Schedule") for the Assumed Contracts, and shall serve such Assumption and Assignment Notice on each of the non-Debtor parties listed therein by first class mail and/or email.  The Cure Schedule will include a description of each Assumed Contract potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

16.     Objections to (y) the Cure Costs set forth in the Cure Schedule or (z) the assumption and assignment of any Assumed Contracts identified in the Cure Schedule must be in writing, state the basis of such objection with specificity, be filed with the Court, and be served on the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days from the date of service of the Assumption and Assignment Notice.

17.     Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served an objection to the assumption and assignment of its Assumed Contract, such non-Debtor counterparty shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment of such Assumed Contract; and (c) be forever barred, estopped and permanently enjoined from asserting or claiming

against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract. In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed Contracts for all purposes in the Chapter 11 Cases and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

18.     Where a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount (the "Disputed Cure Amount"), then (y) to the extent that the parties are able to consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (z) to the extent the parties are unable to consensually resolve the dispute, then such objection will be heard at the hearing to authorize and approve assumption and assignment of the Assumed Contracts in connection with the Sale, including payment of cure (if any) to be held on August [19], 2022 at [_____] (prevailing Eastern Time) (the "Assumption/Assignment Hearing").

19.     Unless otherwise provided in the Successful Bidder(s)' asset purchase agreement, at any time but in no event later than three (3) calendar days prior to the date of closing of the Sale, the Debtors may (a) remove a contract or lease from the schedule of contracts and unexpired leases to be assumed or assigned pursuant to the Sale, or (b) modify the previously-stated Cure Costs associated with any contract or lease.

20.     The form of the Sale Notice and the Assumption and Assignment Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required. No finding or ruling is made in this Order as to the merits of any motion

for approval of the Sale. As soon as reasonably practicable after entry of this Order, the Debtors shall cause the Sale Notice to be served upon, without limitation, (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the United States Department of Justice; (iv) counsel to the DIP Lender; (v) counsel to any statutory committee; (vi) all state attorneys' general and consumer protection agencies in jurisdictions in which the Assets are located; (vii) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (viii) all parties who are known by the Debtors to assert liens against the Assets; (ix) all non-Debtor parties to the Assumed Contracts; (x) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Debtors' assets; and (xi) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, "Sale Notice Parties").

21. To the extent a Bid involves or contemplates any modification or amendment to the authorized dealer agreements between AT&T Mobility II, LLC ("AT&T") and Enjoy Technologies, Inc. (the "AT&T Agreements"), the Debtors and AT&T shall have the right to consult with such bidder regarding any such modification or amendment to the AT&T Agreements.

22. All parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

23.	The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

24.	Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.	The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

<u>**EXHIBIT 1**</u>

**The Bidding Procedures**

# BIDDING PROCEDURES

On June 30, 2022, Enjoy Technology, Inc. and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Set forth below are the bidding procedures (the "<u>Bidding Procedures</u>")[4] to be used with respect to the sale or disposition (the "<u>Sale</u>") of the Assets (as defined below) of the Debtors.

**Any party interested in bidding on the Assets should contact Marc Puntus (mpuntus@centerview.com; tel. 212-429-2330) of Centerview Partners, LLC ("Centerview") the Debtors' proposed investment banker in these Chapter 11 Cases.**

### *Summary of Key Sale Process Dates*

| Date | Deadline/Event |
|---|---|
| July 15, 2022 at 4:00 p.m. (ET) | Bidding Procedures Hearing |
| Three (3) business days after the entry of the Bidding Procedures Order | Deadline for Debtors to file the Assumption and Assignment Notice and Cure Schedule |
| Fourteen (14) days after service of the Assumption and Assignment Notice at 4:00 p.m. (ET) | Deadline to object to the Debtors' proposed assumption and assignment of the Assumed Contracts and related Cure Costs |
| August 2, 2022, at 4:00 p.m. (ET) | Deadline to object to the Sale[5] of the Assets |
| August 8, 2022, at 10:00 a.m. (ET) | Bid Deadline |
| No later than the earlier of (i) twenty-four (24) hours after such Bids are received, or (ii) August 8, 2022, at 9:00 p.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion of Debtors for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Manner and Notice Thereof, and (D) Scheduling a Hearing to Authorize and Approve Assumption and Assignment of the Assumed Contracts; and (II) an Order Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances; and (III) an Order Authorizing and Approving the Assumption and Assignment of the Assumed Contracts; and (IV) Granting Related Relief* (the "<u>Motion</u>").

[5] This objection deadline applies to all objections to the Motion and the Sale of the Assets to a Successful Bidder, with the exception of objections related solely to conduct of the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder.

| Date | Deadline/Event |
|---|---|
| August 9, 2022, starting at 10:00 a.m. (ET) | Auction (if necessary) |
| August 10, 2022 | Deadline to file and serve Notice of Successful Bidder |
| August 11, 2022, at 4:00 p.m. (ET) | Deadline to object to (i) conduct of the Auction, (ii) the proposed Sale to the Successful Bidder, and (iii) ability of the Successful Bidder to provide adequate assurance of future performance, or the proposed form of adequate assurance of future performance |
| August 12, 2022, at 10:00 a.m. (ET) | Sale Hearing |
| On or prior to August 29, 2022 | Closing |
| August [19], 2022 | Assumption/Assignment Hearing (if necessary) |

## I.      Description of the Assets to be Sold

The Debtors are seeking to sell all or substantially all of their U.S. assets, including but not limited to the equipment, intellectual property, unexpired leases, contract rights and other assets related to or necessary to operate the business currently operated by the Debtors (the "Assets"), in each case free and clear of all liens, claims, and encumbrances thereon.

The Sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.      Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into (unless previously entered into) with the Debtors, on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement"). Further, to participate in the diligence process and receive access to due diligence information, a party must submit to the Debtors or their advisors sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate the applicable Sale and (ii) intends

to access the Data Room for a purpose consistent with these Bidding Procedures. Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "<u>Potential Bidder</u>." The DIP Lender[6] constitutes a Potential Bidder without any further action.

After a Potential Bidder enters into a Confidentiality Agreement with the Debtors, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information (including, if applicable, financial data) with respect to the Assets.

## III.     <u>Determination by the Debtors</u>

As appropriate throughout the Bidding Process, the Debtors will consult with any statutory committee appointed in the Case, if any (each a "<u>Committee</u>"), the DIP Lender, and any other party that the Debtors deem appropriate (the "<u>Consultation Parties</u>") and shall (a) coordinate with Potential Bidders regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) following consultation with the Consultation Parties, negotiate any bid made to acquire any or all of the Assets, and (d) following consultation with the Consultation Parties, make such other determinations as are provided in these Bidding Procedures (collectively, the "<u>Bidding Process</u>"); provided that the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating as a bidder for the Assets. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party. For the avoidance of doubt, the DIP Lender is a Consultation Party, but shall not be entitled to the rights of a Consultation Party unless and until it irrefutably confirms in writing to the Debtors that it does not intend to participate as a bidder for the Assets.

## IV.     <u>Due Diligence</u>

The Debtors have established a confidential electronic data room concerning the Assets (the "<u>Data Room</u>") and will grant each Potential Bidder or Consultation Party, as applicable, access to such Data Room. Up to and including the Bid Deadline (as defined below) (such period, the "<u>Diligence Period</u>"), the Debtors shall afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or or Consultation Parties, as applicable. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to (a) all Potential Bidders, and (b) all Consultation Parties. Each Potential Bidder shall be required to acknowledge that it has had

---

[6]     The "DIP Lender" is Asurion, LLC, in its capacity as lender under the DIP Facility, as defined in that *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, and (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Docket No. 83] (the "<u>Interim DIP Order</u>").

an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder who does not otherwise comply with the participation requirements set forth above.

## V.        Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Centerview, attn.: Marc Puntus, at mpuntus@centerview.com by no later than August 8, 2022, at 10:00 a.m. (prevailing Eastern Time) (as may be extended, with the consent of the DIP Lender, a "Bid Deadline").[7]  As soon as reasonably practicable following the Bid Deadline, the Debtors will provide to the Consultation Parties copies of all Qualified Bids (with such distribution permissible by electronic means).

## VI.       Bid Requirements

All bids (each hereinafter, a "Bid") must comply with the following requirements (collectively, the "Bid Requirements"):

(a)     be accompanied by a letter or email:

     (i)     fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or its advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder;

     (ii)    setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price; provided, that, the proposed consideration must include and identify a cash component sufficient to pay the DIP Facility and DIP Obligations, including all amounts of the DIP Roll-Up, as well as the Stalking Horse Bid Protections; provided further, that, Asurion, LLC or an assignee thereof with respect to the DIP Facility shall be entitled to credit bid the full amount of the DIP Facility in connection with the sale of any DIP Collateral (as defined in the Interim DIP Order, or the final order approving the DIP Facility, as applicable);

---

[7]    The Debtors will also consider proposals to acquire any and all of the Assets through a plan of reorganization. Should any such proposal be received prior to the Bid Deadline that the Debtor, in consultation with the Consultation Parties, concludes is in the best interest of the estate and its stakeholders, then the Debtors reserve the right to postpone the Auction and proceed toward the confirmation of a plan.

(iii)    stating with specificity the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(iv)    providing that the Bid is not subject to any bidding, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement (the "Bidding Fee"), and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Assets; provided, however, that if Asurion, LLC is designated as the stalking horse bidder (the "Stalking Horse Bidder"), it shall be entitled to a break-up fee equal to 3% of the aggregate purchase price under the Stalking Horse Agreement[8] and to reimbursement of reasonable documented expenses in connection with the negotiations, preparation, and execution of the Stalking Horse Agreement in an amount no greater $500,000.00 (collectively, the "Stalking Horse Bid Protections");

(v)    providing, with respect to any Bid that includes Transferred Assets (as defined in the Stalking Horse Agreement), aggregate consideration that is in an amount greater than the sum of the Purchase Price (as defined in the Stalking Horse Agreement), the Stalking Horse Bid Protections, and $2,000,000;

(vi)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable until two (2) business days after the closing of the Sale;

(vii)    containing a commitment to close the contemplated transaction(s) by a Closing Date (as defined below) of no later than August 29, 2022;

(viii)    providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(ix)    containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets and has relied solely upon its own independent review, investigation and/or inspection of any documents and any other information in making the Bid;

(x)    providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined

---

[8]    The "Stalking Horse Agreement" shall mean that stalking horse purchase agreement by and between the Debtors and Asurion, LLC or an affiliate or assignee thereof, in form and substance acceptable to either party in their sole and absolute discretion.

below) (the "<u>Next-Highest Bid</u>") with respect to the relevant Assets through the Closing Date; and

(b)    be accompanied by (i) an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (a "<u>Qualified Bid Purchase Agreement</u>"), and (ii) if the Stalking Horse Agreement has been entered into, a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the Stalking Horse Agreement and the applicable schedules and exhibits;

(c)    be accompanied by adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>"), which may include (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iv) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d)    be accompanied by (i) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtor, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited into an escrow account to be identified and established by the Debtors (a "<u>Good Faith Deposit</u>"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (provided further that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in its sole discretion after consulting with the Consultation Parties. For the avoidance of doubt, the Stalking Horse Bidder shall not be required to make a Good Faith Deposit.

The Debtors, in consultation with those Consultation Parties that have not submitted a Bid, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above. A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Debtors, will be considered a "<u>Qualified Bid</u>" and each Potential Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>." The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than the earlier of (i) twenty-four (24) hours after such Bids are received, or (ii) August 8, 2022, at 9:00 p.m. ET. For the avoidance of doubt, any Stalking Horse Agreement will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a

Potential Bidder must satisfy to be a Qualified Bidder. The Debtors shall inform the Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid (as defined below) no later than the earlier of (i) twenty-four (24) hours after such Bids are received, or (ii) August 8, 2022, at 9:00 p.m. ET.

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

(a) requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

(b) is not received by the Bid Deadline;

(c) does not comport with the Bid Requirements;

(d) is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(e) does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; provided that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects. In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than five (5) business days after the Bid Deadline.

The Debtors may, in consultation with the Consultation Parties, among other things, (y) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (z) cancel the Auction and terminate the proposed Sale for the subject Assets.

## VII.     Credit Bid

The DIP Lender, including in its role as Stalking Horse Bidder, shall have the right to credit bid all or a portion of the value of the DIP Obligations (as defined in the Interim DIP Order, or the final order approving the DIP Facility, as applicable) within the meaning of section 363(k) of the Bankruptcy Code with respect to the purchase of any Assets. For the avoidance of doubt, any debt that is credit bid in the Stalking Horse Bid shall be valued for purposes of determining the consideration contemplated by the Stalking Horse Bid at the full principal

amount plus accrued interest, fees, costs and expenses with respect to the DIP Obligations at the time of the Auction, including but not limited to the Termination Fee (as defined in the Interim DIP Order, or the final order approving the DIP Facility, as applicable).

## VIII.    <u>Auction</u>

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below).  The Consultation Parties shall be permitted to attend the Auction.  In addition, any creditor of the Debtors or party the Debtors deem appropriate may observe the Auction; provided, however, that any such party must provide notice of its intent to observe to the Debtors at least one (1) day before the Auction by electronic mail to Michael A. Klein, Esq. at mklein@cooley.com.  At least one (1) day prior to the start of the Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction.  If the Debtors receive only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets.  At any point and at its sole discretion, the Debtors shall have the right to remove any Assets from the Auction.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "<u>Auction</u>") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "<u>Starting Bid(s)</u>").  The determination of which Qualified Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (i) the amount and nature of the consideration, including any obligations to be assumed; (ii) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (iii) the number, type and nature of any changes to the Stalking Horse Agreement, as applicable, requested by each Qualified Bidder; (iv) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (v) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (vi) the net benefit to the Debtors' estates (including after taking account of the Stalking Horse Bid Protections); (vii) the tax consequences of such Qualified Bid; and (viii) the impact on employees and the proposed treatment of employee obligations.  The Starting Bid(s) will be provided to Qualified Bidders on or before August 8, 2022, at 9:00 p.m. ET.

The Auction shall be held virtually on August 9, 2022, starting at 10:00 a.m. (prevailing Eastern Time).  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, and any creditor of the Debtors that has provided notice in writing of its intent to observe the Auction at least one (1) day prior to the start of the Auction shall be able to attend and observe the Auction, along with any other parties the

Debtors deem appropriate, through a Zoom link to be provided to all such parties prior to the commencement of the Auction. Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estates in an amount equal to or greater than $500,000 or such other amount determined by the Debtors in consultation with the Consultation Parties ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, as determined by the Debtors in the exercise of their reasonable business judgment and in consultation with the Consultation Parties. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest or otherwise best offer for the subject Assets (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below. In any Subsequent Bid by the Stalking Horse Bidder, the amount of the Stalking Horse Bid Protections shall be included in the calculation of such Bid.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; provided that such rules (1) are not materially inconsistent with these Bidding Procedures, the Bankruptcy Code, the documents governing the DIP Facility, or applicable orders of the Bankruptcy Court, and (2) are disclosed to each Qualified Bidder during the Auction. The bidding at the Auction shall be transcribed and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale; provided, that, the Stalking Horse Bid shall only constitute the Next-Highest Bid, and the Stalking Horse Bidder shall only constitute the Next-Highest Bidder, in each case, if the Stalking Horse Bidder agrees to such treatment in its sole and absolute discretion at the Auction. Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or

Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidders.

All bidders at the Auction will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and all agreements entered into in connection with any proposed sale transaction.

## IX.        Acceptance of Qualified Bids

The Debtors may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' business judgment, upon considering any comments of the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the documents governing the DIP Facility, or (iii) contrary to the best interests of the Debtors' and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## X.        No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders, other than the Stalking Horse Bidder, shall not be allowed any Bidding Fee as a precondition to, or in consideration of, presenting any bid or participating in the Bidding Process reflected herein.

## XI.        Sale Hearing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall take place on August 12, 2022 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing"). The Sale Hearing may be adjourned by the Debtors, consistent with the terms of the documents governing the DIP Facility, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Chapter 11 Cases.

**XII.**     <u>Return of Good Faith Deposit</u>

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the applicable closing date (the "<u>Closing Date</u>"). The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than seven (7) business days following the Auction.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction) or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

**XIII.**     <u>Reservation of Rights and Modifications</u>

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, and consistent with the documents governing the DIP Facility, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (y) likely to have a chilling effect on the potential bidding or (z) otherwise contrary to the goal of maximizing value from the Sale process for the Debtors' estates, their creditors, and all other parties in interest.

**XIV.**     <u>Next-Highest Bidder</u>

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the

Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.

**XV.**     **DIP Order**

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise: (a) any right of the DIP Lender to consent to the Sale of any portion of its collateral, including, without limitation, any Assets, on terms and conditions acceptable to the DIP Lender are hereby expressly reserved and not modified, waived or impaired in any way by these Bidding Procedures; and (b) nothing in these Bidding Procedures shall amend, modify or impair any provision of the Interim DIP Order, or the final order approving the DIP Facility, as applicable, or the rights of the Debtors or the DIP Lender.

## EXHIBIT 2

### Sale Notice


# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENJOY TECHNOLOGY, INC., *et al.*,[1] | ) | Case No. 22-10580 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### NOTICE OF AUCTION AND SALE HEARING

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1. On June 30, 2022, the above-captioned debtors and debtor-in-possession (the "<u>Debtors</u>"), filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

2. On July 3, 2022, the Debtors filed a motion (the "<u>Bidding Procedures and Sale Motion</u>"), pursuant to sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), seeking entry of an order (the "<u>Bidding Procedures Order</u>") (a) scheduling an auction (the "<u>Auction</u>") for the sale of the Debtors' assets (the "<u>Assets</u>") on or about August 9, 2022, and a hearing to approve the sale of the Assets (the "<u>Sale Hearing</u>") on or about August 12, 2022, (b) approving procedures (the "<u>Bidding Procedures</u>") for submitting competing bids for the Assets, (c) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse Agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (D) approving the form and manner of the notice of the Auction and the Sale Hearing, (e) establishing procedures for the assumption and assignment of the Assumed Contracts (as defined in the Bidding Procedures Order) to any purchaser(s) of the Assets and approving manner of notice thereof (the "<u>Assumption and Assignment Notice</u>"), and (f) scheduling a hearing to approve assumption and assignment of the Assumed Contracts, payment of cure (if any), and/or resolve any objections thereto.

3. On [•], 2022, the Bankruptcy Court entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, if at least two Qualified Bids with regard to any particular Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline, the Debtors will conduct the Auction. The Auction shall be held virtually on Auction 9, 2022, starting at 10:00 a.m. (prevailing Eastern Time) or such other time as the Debtors, shall designate

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

and notify to all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties,[2] and any creditor of the Debtors that has provided notice in writing of its intent to observe the Auction at least one (1) day prior to the start of the Auction shall be able to attend and observe the Auction, along with any other parties the Debtors deem appropriate, through a Zoom link that the Debtors will distribute to all such parties prior to the commencement of the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **August 8, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to take part in this process and submit a Bid (as defined in the Bidding Procedures) for any portion of the Assets must submit their competing Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.     The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before Judge J. Kate Stickles, United States Bankruptcy Judge, 824 North Market Street, Wilmington, Delaware 19801 on **August 12, 2022, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned by the Debtors, consistent with the terms of the documents governing the DIP Facility, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing of a notice with the Bankruptcy Court.

5.     Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served before **4:00 p.m. (prevailing Eastern Time) on August 2, 2022** (the "Sale Objection Deadline") by the following parties (collectively, the "Notice Parties"):

(a)  proposed counsel to the Debtors, Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen D. Speckhart (cspeckhart@cooley.com) and Weiru Fang (wfang@cooley.com), and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein (mklein@cooley.com), Evan M. Lazerowitz (elazerowitz@cooley.com), and Joseph W. Brown (jbrown@cooley.com));

(b)  proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Daniel J. DeFranceschi (defranceschi@rlf.com), Paul N. Heath (heath@rlf.com), and Brendan J. Schlauch (schlauch@rlf.com));

(c)  the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov));

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

(d) Gibson Dunn & Crutcher LLP, as counsel to the DIP Lender (Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Matthew J. Williams (mjwilliams@gibsondunn.com), Michael S. Neumeister (mneumeister@gibsondunn.com));

(e) Pachulski Stang Ziehl & Jones LLP, as co-counsel to the DIP Lender (Attn: Laura Davis Jones (ljones@pszjlaw.com)); and

(f) counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

6.      Objections related solely to conduct at the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served **on or before August 11, 2022, at 4:00 p.m. (ET)** (the "Auction Objection Deadline") by the Notice Parties.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

7.      This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage all parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures and Sale Motion or the Bidding Procedures Order, may make a written request to Michael Klein, Esq. (mklein@cooley.com).  In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.stretto.com/EnjoyTechnology.

Dated:  July [__], 2022                         Respectfully submitted,
         Wilmington, Delaware

                                                 _/s/ DRAFT_____
                                                 Daniel J. DeFranceschi, Esq. (No. 2732)
                                                 Paul N. Heath, Esq. (No. 3704)
                                                 Brendan J. Schlauch, Esq. (No. 6115)
                                                 **RICHARDS, LAYTON & FINGER, P.A.**
                                                 One Rodney Square
                                                 920 North King Street
                                                 Wilmington, Delaware 19801
                                                 Telephone: (302) 651-7700
                                                 Facsimile:  (302) 651-7701
                                                 Email:  defranceschi@rlf.com
                                                         heath@rlf.com

schlauch@rlf.com

-and-

Cullen Drescher Speckhart, Esq.
Weiru Fang, Esq.
**COOLEY LLP**
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email: cspeckhart@cooley.com
         wfang@cooley.com

-and-

Michael A. Klein, Esq.
Evan Lazerowitz, Esq.
Joseph W. Brown, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: mklein@cooley.com
         elazerowitz@cooley.com
         jbrown@cooley.com

*Proposed Counsel for the Debtors*

# **EXHIBIT 3**

## **Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENJOY TECHNOLOGY, INC., *et al.*,[11] | ) Case No. 22-10580 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

You are receiving this notice because you may be a counterparty to a contract or lease with Enjoy Technology, Inc., Enjoy Technology Operating Corp., and/or Enjoy Technology LLC. Please read this notice carefully as your rights may be affected by the transactions described herein.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On July 3, 2022, the above-captioned debtors and debtor-in-possession (the "Debtors") filed a motion seeking approval of the bidding procedures for the sale of certain of the Debtors' assets (the "Assets") and approval of the sale such Assets (the "Bidding Procedures and Sale Motion") to the highest or best qualified bidder (the "Successful Bidder"). The Debtors have sought the Court's approval at a hearing held on July 15, 2022 of the proposed bidding procedures and the form of this notice. The Debtors have further requested a hearing to approve the sale of the Assets (the "Sale Hearing") for August 12, 2022, at 10:00 a.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the District of Delaware in Wilmington, Delaware (the "Bankruptcy Court") and a hearing to authorize and approve assumption and assignment of the Debtors' executory contracts and unexpired leases, including payment of cure (if any) to be held on August [19], 2022 at [__] (prevailing Eastern Time) (the "Assumption/Assignment Hearing").

2. Pursuant to the Bidding Procedures and Sale Motion, the Debtors may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively, the "Potentially Assigned Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

3. The Debtors have indicated on **Schedule A** annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Agreements (in each instance, the "Cure Amount").

---

[11] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

4. Any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in order for such contract or lease to be assumed and assigned, must file an objection (the "Assumption/Assignment Objection") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court and (d) is served on (i) proposed counsel to the Debtors, Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004 (Attn: Cullen D. Speckhart (cspeckhart@cooley.com) and Weiru Fang (wfang@cooley.com), and Cooley LLP, 55 Hudson Yards, New York, NY 10001 (Attn: Michael A. Klein (mklein@cooley.com), Evan M. Lazerowitz (elazerowitz@cooley.com), and Joseph W. Brown (jbrown@cooley.com)); (ii) proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Daniel J. DeFranceschi (defranceschi@RLF.com), Paul N. Heath (heath@rlf.com), and Brendan J. Schlauch (schlauch@rlf.com)); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter (richard.schepacarter@usdoj.gov)); (iv) Gibson Dunn & Crutcher LLP, as counsel to the DIP Lender (Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Matthew J. Williams (mjwilliams@gibsondunn.com), Michael S. Neumeister (mneumeister@gibsondunn.com)); (v) Pachulski Stang Ziehl & Jones LLP, as co-counsel to the DIP Lender (Attn: Laura Davis Jones (ljones@pszjlaw.com)); (vi) counsel to any statutory committee that has been appointed in these Chapter 11 Cases (collectively, the "Notice Parties") by no later than **4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the service of this Assumption and Assignment Notice** (the "Assumption/Assignment Objection Deadline").

5. The Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice upon parties in interest not later than twenty-four (24) hours after the conclusion of the Auction. The deadline for objecting to the assignment of the Potentially Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance ("Adequate Assurance Objections") shall be August 11, 2022, at 4:00 p.m. (ET) (the "Adequate Assurance Objection Deadline").

6. Unless an Assumption/Assignment Objection is timely and properly filed and served before the Assumption/Assignment Objection Deadline or an Adequate Assurance Objection is timely raised before the Adequate Assurance Objection Deadline, the non-debtor party to a Potentially Assigned Agreement shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (ii) be deemed to have consented to any assumption and assignment of such Potentially Assigned Agreement; and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement.

7.      Where a non-debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "Disputed Cure Amount"), then (y) the cure amount shall be as agreed between the parties or (z) to the extent the parties are unable to consensually resolve the dispute, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Assumption/Assignment Hearing, or at such other date and time as may be fixed by the Bankruptcy Court.  All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

8.      An Assumption/Assignment Objection shall not constitute an objection to the relief generally requested in the Bidding Procedures and Sale Motion.  Parties wishing to otherwise object to the relief requested in the Sale Motion must file and serve a separate objection, stating with particularity such party's grounds for objection, on each of the Notice Parties listed above no later than **August 2, 2022, at 4:00 p.m. (prevailing Eastern Time)**.

9.      If you agree with the Cure Amount indicated on **Schedule A**, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

10.     The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.  Unless otherwise provided in the Successful Bidder(s)' asset purchase agreement, at any time but in no event later than three (3) calendar days prior to the date of closing of the Sale, the Debtors may (a) remove a contract or lease from the schedule of contracts and unexpired leases to be assumed or assigned pursuant to the Sale, or (b) modify the previously-stated Cure Costs associated with any contract or lease.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

Dated:  July [__], 2022                          Respectfully submitted,
         Wilmington, Delaware

                                                 */s/ DRAFT*
                                                 Daniel J. DeFranceschi, Esq. (No. 2732)
                                                 Paul N. Heath, Esq. (No. 3704)
                                                 Brendan J. Schlauch, Esq. (No. 6115)
                                                 **RICHARDS, LAYTON & FINGER, P.A.**
                                                 One Rodney Square
                                                 920 North King Street
                                                 Wilmington, Delaware 19801
                                                 Telephone: (302) 651-7700
                                                 Facsimile: (302) 651-7701

Email:  defranceschi@rlf.com
      heath@rlf.com
      schlauch@rlf.com

-and-

Cullen Drescher Speckhart, Esq.
Weiru Fang, Esq.
**COOLEY LLP**
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899
Email:  cspeckhart@cooley.com
      wfang@cooley.com

-and-

Michael A. Klein, Esq.
Evan Lazerowitz, Esq.
Joseph W. Brown, Esq.
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 479-6000
Facsimile:  (212) 479-6275
Email:  mklein@cooley.com
      elazerowitz@cooley.com
      jbrown@cooley.com

*Proposed Counsel for the Debtors*

## Schedule A

**LEASES**

| Landlord Name / Address | Address of Subject Property | Cure Amount |
| --- | --- | --- |

**EXECUTORY CONTRACTS**

| Counterparty Name / Address | Description of Contract | Cure Amount |
| --- | --- | --- |