# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
In re:                                                     :  Chapter 11
                                                           :
                                                           :  Case No. 22-10580 (JKS)
ENJOY TECHNOLOGIES, INC., et al.,¹                         :
                                                           :  (Jointly Administered)
           Debtors.                                        :
                                                           :  Hearing Date: to be determined.
                                                           :  Objections Due: 8/11/22 at 4:00 p.m.
-----------------------------------------------------------x
```

## OBJECTION OF THE UNITED STATES TRUSTEE TO THE PAYMENT OF CERTAIN FEES AND EXPENSES UNDER THE FINAL ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (D) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDER, (E) MODIFYING THE AUTOMATIC STAY, AND (F) GRANTING RELATED RELIEF [D.I. 200]

Andrew R. Vara, United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned counsel, files this Objection (the "Objection") to the payment of certain fees and expenses under the *Final Order (A) Authorizing The Debtors To Obtain Postpetition Financing, (B) Authorizing The Debtors To Use Cash Collateral, (C) Granting Liens And Superpriority Administrative Expense Claims, (D) Granting Adequate Protection To The Prepetition Lender, (E) Modifying The Automatic Stay, And (F) Granting Related Relief* [D.I. 200] (the "Final DIP Order"), and in support of his Objection² states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230).  The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Any capitalized terms used in this Objection and not otherwise defined herein shall have the meanings given to such in the referenced pleading or document.

## PRELIMINARY STATEMENT

1. In these cases, Asurion -- both the debtor-in-possession lender and "stalking horse" bidder -- seeks reimbursement for fees payable to its financial advisor, Evercore – specifically, a "Financing Fee" in the amount of $750,000.00 and "Stalking Horse Fee" in the amount of $250,000.00.

2. The U.S. Trustee objects to the proposed reimbursement on two grounds. First, neither the Debtors nor Asurion sought this Court's approval of the Stalking Horse Fee in connection with approval of bid procedures, and this Court's bid procedures order does not authorize the Debtors to reimburse Asurion for its transaction-related expenses.

3. Second, under the DIP Order, such fees may only be paid if they are reasonable. Asurion has not proven that Evercore's fees are reasonable in the context of these cases.[3]

## JURISDICTION, VENUE AND STANDING

4. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

5. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In*

---

[3] In addition to Evercore's fees, the Debtors' investment banker, Centerview, will be seeking similar fees as outlined herein in ¶ 24, *infra.*

*re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

6. Under 11 U.S.C. § 307, the U. S. Trustee has standing to be heard on the issues raised by this objection.

**BACKGROUND**

7. On June 30, 2022 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

8. On July 11, 2022, the U.S. Trustee appointed an Official Committee of Unsecured Creditors. (D.I. 110).

9. A description of the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of these Chapter 11 Cases is set forth in the Declaration of John Boken in Support of Chapter 11 Petitions and First Day Motions (the "Boken Declaration") (D.I. 4) which is incorporated by reference herein as may be necessary and applicable.

**The Debtor-in-Possession Financing Motion.**

10. On June 30, 2022, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Senior Secured Lender, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Motion") [D.I. 11] seeking authorization to obtain senior secured superpriority debtor-in-possession, post-petition

3

financing in the aggregate principal amount of $55.0 million from Asurion, LLC ("Asurion"). DIP Mot. ¶ 1.

11. The Final DIP Order was entered on July 26, 2022 [D.I. 200]. The Final DIP Order provides for, among other things, the payment of certain of Asurion's professional fees:

> (a) The Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses incurred by professionals or consultants retained by the DIP Lender, including Gibson, Dunn & Crutcher LLP, Pachulski Stang Ziehl & Jones LLP, Bass, Berry & Sims PLC, and Evercore Group L.L.C. (collectively, the "DIP Professionals"), whether incurred before or after the Petition Date or in connection with the Cases (in any capacity) and the DIP Facility, including the reasonable and documented out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of DIP Professionals) of the DIP Lender, for enforcement costs and documentary taxes associated with the DIP Facility and the transactions contemplated thereby (collectively, the "DIP Professional Fees"). The DIP Professionals shall not be required to file motions or applications with respect to the DIP Professional Fees, provided, however that any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee and counsel to the Committee (collectively, the "Fee Notice Parties"). If no objection to payment of the requested DIP Professionals Fee is made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then such invoice shall be promptly paid, without further order of, or application to, the Court or notice to any other party, and, in any case, within five (5) calendar days following the expiration of the Fee Objection Period.
>
> For the avoidance of doubt, the provisions of such invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney work product doctrine. If within the Fee Objection Period, a Fee Notice Party sends to the affected professional and files with

> the Court a written objection to such invoice, then only the disputed portion of such DIP Professional Fees shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and any undisputed portion shall be paid within five (5) calendar days following the expiration of the Fee Objection Period. Subject to the terms hereof, the Debtors are authorized, without further notice or hearing, to pay all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP to the extent otherwise payable in accordance with the terms of the DIP Loan Documents and/or this Final Order; provided, however that parties shall not have to comply with the fee review provisions set forth above with respect to any fees or expenses incurred prior to the entry of this Final Order.

Final DIP Order ¶ 24.

**Key Pre-Petition Events**

12. In late April 2022, the Debtors engaged AlixPartners to advise them with respect to cash flow management, liquidity forecasting, and various strategic alternatives. Boken Decl. [D.I. 4] ¶ 37.

13. In addition, the Debtors engaged Centerview Partners, LLC ("Centerview") on May 7, 2022, to serve as their investment banker in connection with various strategic alternatives. Boken Decl. ¶ 37.

14. With respect to a potential sale of Enjoy's assets, Debtors received letters of intent from two (2) parties, Asurion and one other counterparty. On June 13, 2022, the Debtors executed a letter of intent with the non-Asurion counterparty that contemplated a transaction whereby that party would make a significant debt and convertible debt investment in the Debtors' business. Boken Decl. ¶ 41.

15. On June 17, 2022, the counterparty informed the Debtors that it would not proceed with a transaction and withdrew its offer. Thereafter, the Debtors refocused their efforts on

consummating a transaction with Asurion, who had also previously submitted a letter of intent for the acquisition of substantially all of the Debtors' U.S. assets and operations. Boken Decl. ¶ 42.

16. On June 19, 2022, the Debtors executed the Asurion Letter of Intent (the "Asurion LOI") which, among other conditions, requires the Debtors to commence these cases as a precondition to an asset sale. The Asurion LOI originally contemplated that Asurion would provide the Debtors with a substantial prepetition loan to provide liquidity for the Debtors' ongoing operations and potentially provide a longer runway to commence chapter 11 cases. The Debtors intended to negotiate the terms of an asset purchase agreement and DIP financing with Asurion during that period, such that when the Debtors filed chapter 11, Asurion would serve as both a DIP lender and stalking-horse purchaser. Boken Decl. ¶ 43.

17. Asurion subsequently determined that it was only willing to fund the Debtors' operations through a DIP in a chapter 11 case. In connection with these chapter 11 cases, Asurion agreed to provide a $55 million DIP facility, which includes approximately $52.5 million of new money and a roll-up of a $2.5 million bridge loan provided by Asurion on the day prior to the Petition Date.[4] Through this bridge loan the Debtors were able to fund their imminent cash needs prior to the filing of these chapter 11 cases. Notwithstanding the $2.5 million bridge loan funded under the Senior Secured Credit Agreement, the Debtors were faced with an inability to satisfy accruing employee and other obligations without immediate access to a DIP, which Asurion has

---

[4] Prior to the filing of these cases, on June 29, 2022, the Debtors, as borrowers, and Asurion, as lender, entered into a Senior Secured Credit, Guaranty and Security Agreement (together with all amendments and other documents ancillary thereto, the "Senior Secured Credit Agreement"). The Senior Secured Credit Agreement provides for commitments of $2.5 million, with a maturity date of July 8, 2022. Asurion, LLC, either directly or through one or more of its US affiliates, as DIP Lender. Boken Decl. ¶ 25. The obligations under the Senior Secured Credit Agreement are secured by a first-priority lien on substantially all the assets of the Company (including, without limitation, intellectual property). As of the Petition Date, approximately $2.5 million remained outstanding under the Senior Secured Credit Agreement. Boken Decl. ¶ 26.

agreed to provide in these cases, subject to the roll-up of the obligations under the Senior Secured Credit Agreement into the DIP.  Boken Decl. ¶ 44.

**The Bid Procedures Motion**

18. On July 3, 2022, the Debtors filed a motion [D.I. 86] seeking, among other things, entry of an order (the "Bid Procedures Order"), (a) scheduling an Auction for the sale of the Assets and a hearing to approve the sale of the Assets (the "Sale Hearing"), (b) approving the Bidding Procedures, (c) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under the Stalking Horse Agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (d) approving the form and manner of the notice of the Auction and the Sale Hearing, (e) establishing procedures for the assumption and assignment of the Assumed Contracts, and (f) scheduling a hearing to approve assumption and assignment of the Assumed Contracts, payment of cure (if any), and/or resolve any objections thereto.

19. On July 25, 2022, the Debtors entered into a Stalking Horse Agreement with Asurion, which Agreement was amended on August 1, 2022 [D.I. 191 & 248].  The Stalking Horse Agreement contemplated that, in connection with a "Third-Party Sale" to an entity other than Asurion, the Debtors would pay Asurion (i) a break-up fee in the amount of 3% of the Purchase Price and (ii) reimburse Asurion's transaction-related expenses in an amount not to exceed $500,000.00.  Asurion APA [D.I. 191] § 2.5.

20. On July 26, 2022, the Court entered the Bid Procedures Order [D.I. 199].  Pursuant to the Bid Procedures Order, a virtual Auction for the Assets was scheduled for August 9, 2022, at 10:00 a.m. if at least two Qualified Bids were received by the Bid Deadline with regard to any particular Assets.  Bid Procedures Order ¶ 7.  The Bid Procedures Order also provided that, if

Asurion was designated as the Stalking Horse Bidder, that it would be entitled to a break-up fee in the amount of $2,586,000.00. *Id.* Ex. 1 (Bid Procedures) VI. (iv); the expense reimbursement in section 2.5 of the Stalking Horse Agreement was not approved by this Court.

21. No Qualified Bids were received by the Bid Deadline except Asurion's Stalking Horse Bid. On August 8, 2022, the Debtors cancelled the Auction and selected the Asurion as the Successful Bidder in accordance with the Bidding Procedures Order [D.I. 266].

22. The Sale Hearing to consider approval of the sale of the Assets to Asurion is scheduled for August 12, 2022, at 10:00 a.m. (prevailing Eastern Time).

**The Retention of Centerview as the Debtors' Investment Banker**

23. In these cases, the Debtors sought to employ and retain Centerview as the Debtors' investment banker, effective as of June 30, 2022, in accordance with the terms and conditions set forth in the application (the "<u>Centerview Application</u>") and accompanying Engagement Letter [D.I. 119].

24. As set forth in the Application, Centerview was retained to provide (i) General Financial Advisory and Investment Banking Services, (ii) Restructuring Services, (iii) Financing Services and (iv) Sale Services. Centerview Appl. ¶ 11.

25. Centerview's fees related to these investment banking services are summarized as follows:

> A monthly financial advisory fee of $150,000 (the "Monthly Advisory Fee"), the first of which shall be due and paid by the Debtors upon execution of the Engagement Letter and thereafter on each monthly anniversary thereof during the term of Centerview's engagement. After receipt of aggregate Monthly Advisory Fees of $450,000, 50% of the amount of any subsequent Monthly Advisory Fee paid to Centerview will be credited (but only once) against any Transaction Fee (defined below) payable to Centerview pursuant to subparagraph 2(b) of the Engagement Letter.

A transaction fee (a "Transaction Fee"), contingent upon the consummation of a Restructuring and/or Sale and payable at the closing thereof equal to either (i) $3,000,000 upon consummation of a Restructuring or (ii) the greater of $5,000,000 and 2.00% of Aggregate Consideration upon consummation of a Sale (for the avoidance of doubt, Centerview shall only be entitled to exclusively (ii) in the event of a Restructuring and Sale); it being understood and agreed that if more than 50% of the outstanding voting equity securities of the Debtors on a fully diluted basis is acquired through a Sale (a "Control Transaction"), Centerview shall, upon the consummation of such Control Transaction, be entitled to and shall be paid its full Transaction Fee calculated pursuant to subparagraph 2(b) of the Engagement Letter as though 100% of the outstanding voting equity securities of the Debtors had been acquired.

A financing fee (the "Financing Fee") equal to (i) 1.00% of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien including any debtor in possession financing; (ii) 2.00% of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated; and (iii) 3.00% of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued.

26. On August 9, 2022, this Court entered the order approving the Centerview Application [D.I. 281].[5]

**The Evercore Fee Invoice**

27. On July 27, 2022, the Evercore Invoice was provided to the Notice Parties. The Evercore Invoice stated, without any supporting information, that the following fees and expenses were due:

Fees Due:
Financing Fee: $750,000.00
Stalking Horse Fee: $250,000.00
Total Fees Due: $1,000,000.00

---

[5] The Centerview Order contains certain modifications requested by the U.S. Trustee, including the requirement that Centerview file applications on notice and obtain a court order before payment of Centerview's fees and expenses. Centerview Order ¶ 4.

9

Out-of-Pocket Expenses:
Professional, Research and Other: $212.86
Total Out-of-Pocket Expenses: $212.86

Total Amount Due and Payable Upon Receipt $1,000,212.86.

## ARGUMENT

**Payment of the "Stalking Horse" Fee Was Not Authorized Under the Bid Procedures Order**

28.     In the Stalking Horse Agreement, the Debtors and Asurion sought approval of an expense reimbursement in connection with the transaction in an amount not to exceed $500,000.00 that would be payable solely in the event that an alternative transaction was consummated. Asurion APA § 2.5.  The requested expense reimbursement was not approved in the Bid Procedures Order.  Asurion APA § Ex. 1 (Bid Procedures) VI. (iv).  Accordingly, Asurion should not be paid the "Stalking Horse Fee" or any other transaction-related fees/expenses, given that the Court did not approve same in the Bid Procedures Order.

29.     The Stalking Horse Fee was not authorized pursuant to the Final DIP Order, either. There was no specific disclosure in the DIP Motion that the Debtors were seeking approval of transaction-related fees for Evercore and what the amount of such fees were.  Given that Asurion had not fully committed to a transaction involving the Debtors at the time the DIP Motion was filed, the Debtors and Asurion cannot argue now that all of Asurion's transaction-related costs may be reimbursed pursuant to paragraph 24 of the Final DIP Order, especially in light of the fact that no expense reimbursement was approved by this Court in connection with bid procedures.

**Professional Fee and Expense Reimbursement Requests Under the Final DIP Order Must Be Reasonable**

30. Under the Final DIP Order, the Debtors are authorized to pay the reasonable and documented fees and expenses incurred by the DIP Professionals in connection with the Cases and the DIP Facility. DIP Order ¶ 24.

31. Reasonableness has two facets: (1) the itemized fees themselves must be reasonable, and (2) the creditor's actions must be reasonable. *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D. N. J. 1993).[6]

32. Courts have used the lodestar method to determine the reasonableness of professional fee requests in bankruptcy cases. *See In re Gordon-Brown*, 340 B.R. 751, 757 (Bankr. E.D. Pa. 2006) (applying lodestar method to determine the reasonableness of counsel fees as a component of a proof of claim in a chapter 13 case); *see also In re West Chestnut Realty of Haverford, Inc.,* 186 B.R. 612, 618 (Bankr. E.D.Pa.1995) (applying lodestar method to determine the reasonableness of counsel fees under section 506(b) of the Bankruptcy Code in a non-chapter 13 context).

33. The calculation of the lodestar is a two-step process. "First . . . the court must determine the reasonable number of hours expended multiplied by the appropriate billing rate. Second, once the appropriate lodestar amount is established, the next step is a determination as to whether or not an enhancement or reduction of the fee is warranted." *In re Landmark Distribs., Inc.*, 195 B.R. 837, 849 (Bankr. D. N.J. 1996). The lodestar may be adjusted to consider the results

---

[6] Under section 506(b) of the Bankruptcy Code, in order for attorney's fees and costs to be allowed as part of a creditor's claim: (1) the creditor must have an allowed, secured claim; (2) the creditor must be oversecured; (3) the underlying documents must provide for such fees and costs; and (4) the amount of the claim for fees and costs must be reasonable. *Id.* (citing *In re Wire Cloth Prods., Inc.,* 130 B.R. 798, 814 (Bankr.N.D.Ill.1991).

obtained.  *See Lindy Bros. Builders v. Am. Rediator & Standard Sanitary Corp.*, 640 F.2d 102, 118 (3d Cir. 1976); *In re Am. Mortg. & Inv. Servs.*, 158 B.R. 43, 47-48 (Bankr. D. N.J. 1993).

34. In these cases, Evercore has not provided hourly billing rates.  Further, Evercore has not disclosed whether the individuals who worked on the matter ever bill on an hourly rate basis, and if so, the amount of such rates.  Such information is relevant to the reasonableness of the fees Evercore is seeking in these cases

35. While the U.S. Trustee understands that the Financing Fee and Stalking Horse Fee are being charged by Evercore as part of the DIP financing and the sale, the use of such flat fees should not prevent a reasonableness review of the fees, or the use of an hourly rate for that purpose. *See In re Stations Holding, Inc.*, 02-10882, 2004 WL 1857116 (Bankr. D. Del., Aug. 18, 2004) (MFW).  In *Stations Holding*, this Court reduced a financial advisor's flat fee from $1 million to $104,000, based on amount of hours that were being billed, multiplied by what this Court believed was a reasonable hourly rate.  In so doing, the Court held that while the financial advisor and the Committee "agreed to a flat fee rate for service provided, this arrangement does not prevent the Court from using an hourly rate to determine the reasonableness of that fee."  *Id*. at *3 (*citing In re Commercial Fin. Servs., Inc.*, 298 B.R. 733, 749 (B.A.P. 10th Cir. 2003)).  The same rationale should apply here.

36. The U.S. Trustee leaves Asurion and Evercore to their burden to establish the reasonableness of the proposed fees and expenses sought to be reimbursed.

***

## RESERVATION OF RIGHTS AND CONCLUSION

37. The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the United States Trustee respectfully requests that this Court deny payment of the Evercore invoice and grant such other relief as this Court deems just and appropriate under the circumstances.

Dated: August 11, 2022
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGION THREE**

By: */s/Richard L. Schepacarter*
Richard L. Schepacarter, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
richard.schepacarter@usdoj.gov