# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENJOY TECHNOLOGY, INC., *et al.*[1] | Case No. 22-10580 (JKS) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO EVERCORE GROUP L.L.C.'S INVOICE FOR REIMBURSEMENT
OF FEES AS A DIP PROFESSIONAL**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its undersigned proposed counsel, hereby files this *Objection of the Official Committee of Unsecured Creditors to Evercore Group LLC's Invoice for Reimbursement of Fees as a DIP Professional* (the "Objection"), and hereby joins in the *Objection of the United States Trustee to the Payment of Certain Fees and Expenses Under the Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, (E) Modifying the Automatic Stay, and (F) Granting Related Relief* (the "U.S. Trustee's Objection") [D.I. 310], and in support of the Objection the Committee states as follows:

## PRELIMINARY STATEMENT

1. The Committee files this Objection to Evercore's request for reimbursement of fees and expenses as a DIP Professional, and joins in the U.S. Trustee's Objection to Evercore's fees.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

The bases of the Committee's Objection are threefold: (1) the nature and extent of Evercore's fees were not properly disclosed to the parties and to the Court; (2) Evercore's fees are not covered by the relief requested in the DIP Motion, the expense reimbursement provisions of the DIP Term Sheet that was attached to the DIP Motion, or the fees contemplated by the Final DIP Order; and (3) under the circumstances, Evercore's fees are not reasonable. Professional fees in these chapter 11 cases continue to compound, which in turn reduces the likelihood of general unsecured creditors achieving a 100% recovery, as was advertised at the outset of the case. *See e.g. Declaration of John Boken in Support of Chapter 11 Petitions and First Day Motions* at ¶ 46. ("The Debtors anticipate that the proposed purchase price to be received from Asurion will be sufficient to satisfy all secured and unsecured claims in full."). Indeed, because DIP Professional fees are a direct deduct from the Asurion purchase price under the terms of the APA, any fees awarded and paid to the DIP Professionals will diminish unsecured creditor recoveries in the case. Therefore, the Committee requests that the Court deny approval of Evercore's fees or limit any approved fees to any reasonable amount that Evercore can demonstrate is reimbursable under the Final DIP Order.

## BACKGROUND

2. On June 30, 2022 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. No trustee has been appointed, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2

4. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Senior Secured Lender, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 11] (the "<u>DIP Motion</u>").

5. On July 1, 2022, the Court entered the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, and (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Docket No. 83] (the "<u>Interim DIP Order</u>").

6. After the hearing on the DIP Motion and the Interim DIP Order, on July 26, 2022, the Court entered the *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Docket No. 200] (the "<u>Final DIP Order</u>").[2] Attached as Exhibit 1 to the Final DIP Order is the DIP Term Sheet.

7. Additionally, on July 26, 2022, the Court entered the *Order (I) (A) Approving Certain Bidding Procedures* and the *Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of all or Substantially all of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of*

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Final DIP Order.

*Notice Thereof, and (D) Scheduling a Hearing to Approve Assumption and Assignment of the Assumed Contracts; and (II) Granting Related Relief* (the "Bidding Procedures Order") [D.I. 199].

8. Asurion, LLC ("Asurion") either directly or through one or more of its US affiliates, is the DIP lender (the "DIP Lender"). Asurion is also the stalking horse bidder (the "Stalking Horse Bidder") *See e.g.* D.I. 191. The DIP Lender retained certain professionals or consultants including, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), Pachulski Stang Ziehl & Jones LLP ("Pachulski"), Bass, Berry & Sims PLC ("Bass Berry"), and Evercore Group L.L.C. ("Evercore" together with Gibson Dunn, Pachulski, and Bass Berry, the "DIP Professionals"). *See* Final DIP Order, ¶ 24(a).

9. "The Debtors are authorized and directed to pay, without further Court order, the ***reasonable*** and documented fees and expenses incurred by … [the DIP Professionals], whether incurred before or after the Petition Date or in connection with the Cases (in any capacity) and the DIP Facility, including the ***reasonable*** and documented out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of DIP Professionals) of the DIP Lender, for enforcement costs and documentary taxes associated with the DIP Facility and the transactions contemplated thereby (collectively, the "DIP Professional Fees"). *See* Final DIP Order, ¶ 24(a) (emphasis added).

10. In accordance with the Final DIP Order, on July 27, 2022, Evercore Group L.L.C. ("Evercore") provided a copy of its first invoice (the "Invoice") to counsel for Debtors, the U.S. Trustee, and counsel to the Committee (the "Fee Notice Parties"). The Invoice summarizes Evercore's fees and expenses, thus far, and the total Invoice breakdown is as follows:

**Fees Due:**
    Financing Fee                                             $750,000.00
    Stalking Horse Fee                                  $250,000.00
**Total Fees Due:**                                           **$1,000,000.00**

**Out-of-Pocket Expenses:**
    Professional, Research and Other                $212.86

**Total Out-of-Pocket Expenses:**                    **$212.86**

**Total Amount Due and Payable Upon Receipt**      **$1,000,216.86**

11. Under the Final DIP Order, the Fee Notice Parties are afforded ten (10) calendar days to object to the DIP Professional's fees. *See* Final DIP Order ¶ 24(a). The Committee's deadline to object to the Invoice would have lapsed on August 6, 2022, however, by way of agreement between the Committee and Evercore, the objection deadline has been extended through August 11, 2022 at 5:00 p.m. (EST) (the "Objection Deadline").

12. Evercore's engagement letter (the "Engagement Letter")[3] with Asurion provides that Evercore will be paid the fees set forth below, among other fees:

    a. A $750,000 financing fee (the "Financing Fee") payable upon the Court's approval of any interim debtor-in-possession financing provided by the DIP Lender.

    b. A $250,000 stalking horse fee (the "Stalking Horse Fee"), payable upon either (i) Bankruptcy Court approval of a stalking horse bid for the Target by the Company pursuant to section 363 of the Bankruptcy Code, or (ii) the filing of a Plan which would result in the DIP Lender owning all or substantially all of the equity interests or assets of Enjoy Technology.

---

[3] Evercore's Engagement Letter also provides for an acquisition fee which would be payable upon consummation of an acquisition. The Financing Fee and/or Stalking Horse Fee would be credited (without duplication) against any acquisition fee that is actually paid.

## OBJECTION

13. The Final DIP Order expressly preserves the Committee's right to object to DIP Professional fees on reasonableness grounds. *See* Final DIP Order, at ¶ 24(a). Evercore's fee structure is not only unreasonable on its face, but when combined with the plethora of professionals in these cases, it exceeds all bounds of reasonableness.

### A. Evercore's Fees Were Not Properly Disclosed in the DIP Motion.

14. First, and perhaps most egregious, Evercore's lavish fee arrangement was not disclosed prior to entry of the Final DIP Order. Only *after* receiving a copy of the Invoice, and at the request of the United States Trustee, did the Committee see a copy of Evercore's Engagement Letter. Interestingly, the Engagement Letter is dated July 12, 2022 – i.e. *after* the Petition Date, *after* the Debtors' filed the DIP Motion, and *after* entry of the Interim DIP Order. Evercore's fee arrangement was not disclosed in the DIP Motion and was not disclosed to the Committee until after the Invoice was submitted for payment.

### B. The DIP Motion, DIP Term Sheet, Final DIP Order, and the Bidding Procedures Order Do Not Contemplate Payment of Sale Related Expenses to Evercore.

15. The express language of the DIP Motion and the DIP Term sheet do not permit Evercore to be reimbursed for sale related expenses. Specifically, the DIP Motion states that, through the Interim Order, the Debtors were authorized and directed "to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, ***letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements*** of the DIP Lender's attorneys, advisors, accountants and other

consultants, all to the extent provided in, and in accordance with, the DIP Documents." *See* DIP Motion, at ¶ (1)(e) (emphasis added).

16. The DIP Term sheet also limits payment to expenses that deal directly with the DIP Loan Documents and the funding of all Loans under the DIP Facility, and not any sale related expenses. These two separate transactions must not be conflated even though Asurion is both the DIP Lender and the Stalking Horse Bidder. The Expenses and Offset section of the DIP Term Sheet states as follows:

> The Borrowers and each Guarantor shall jointly and severally pay (i) (x) all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender (including, but limited in the case of counsel, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender's counsels, GDC and BBS, and, to the extent necessary, one firm of local counsel engaged by the Lender in connection with the Debtors' Chapter 11 Cases, and any successor counsel to each), in each case in connection with the negotiations, preparation, execution and delivery of the **DIP Loan Documents** and the funding of all Loans under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained by the Lender and its counsels and professional advisors in connection with the **DIP Facility, the DIP Loan Documents** or the transactions contemplated thereby, the administration of the **DIP Facility** and any amendment or waiver of any provision of the **DIP Loan Documents** and (ii) without duplication, all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender (including, but limited in the case of counsels, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of GDC and BBS (and any successor counsel) as outside counsels to the Lender (and any successor counsel), and, to the extent necessary, one firm of local counsel engaged by the Lender in each relevant jurisdiction, and any successor counsel to such primary counsel and local counsel, in each case in connection with (A) the enforcement of any rights and remedies under the **DIP Loan Documents**, (B) the Chapter 11 Cases, including attendance at all hearings in respect of the Chapter 11 Cases; and (C) defending and prosecuting any actions or proceedings arising out of or relating to the Obligations, the Liens securing the Obligations, or any transaction related to or arising in connection with the **DIP Credit Agreement or the other DIP Loan Documents**.

*See* DIP Term Sheet, at 14(b) (emphasis added).

17. Nowhere in the above-quoted sections do the DIP Motion and the DIP Term sheet contemplate payment of fees related to the sale. Despite this clear omission, Evercore is seeking a Stalking Horse Fee which is, by definition, a sale fee.

18. Additionally, during the Committee's negotiations with the Debtors and Asurion regarding the Bidding Procedures Order, the expense reimbursement component of the Stalking Horse Bid was reduced, and ultimately, Asurion, at the request of the United States Trustee, agreed to drop the expense reimbursement entirely. *See* D.I. 199. Having waived its right to sale related expenses, Asurion cannot backdoor the very same sale related expenses through the Final DIP Order – specifically, Evercore's Stalking Horse Fee.

C. **Evercore's Fees are Unreasonable Under the Circumstances of these Chapter 11 Cases.**

19. Additionally, the duplication of efforts between the investment bankers in these cases is troubling. Centerview Partners LLC ("Centerview") was retained by the Debtors to serve as their investment banker. D.I. 281. Pursuant to Centerview's retention order and engagement letter, Centerview is entitled to receive, in relevant part: a monthly advisory fee of $150,000 (the "Centerview Monthly Advisory Fee"), where the first three Monthly Advisory Fees ($450,000 in aggregate) shall be 50% credited (but only once), and 100% of the subsequent Monthly Advisory Fees will be credited (but only once) against any transaction fee.[4] Additionally, Centerview is budgeted to a financing fee in the amount of $550,000 (the "Centerview Financing Fee").

20. Evercore's efforts are duplicative of Centerview's. Evercore has acted as a merger and acquisition diligence advisor for Asurion, however, there is no evidence that Evercore put

---

[4] For the avoidance of doubt, the Committee does not take issue with Centerview's fees, in light of the settlement agreement that was reached with regard to crediting the Centerview Monthly Advisory Fee against the Centerview transaction fee.

8

together the financing or sale transaction to justify receiving, thus far, $1 million in fees. Further, Evercore's proposed Financing Fee is higher than Centerview's Financing Fee. It is unreasonable to have the buyer's investment banker financing fee exceed the Debtors' investment banker financing fee, and to force the Debtors' estates to bear the cost of both fees.

21. Finally, in an effort to avoid objecting to the Invoice on reasonableness grounds and coming before the Court on a fee dispute, the Committee requested supporting documentation from Evercore to evaluate the reasonableness of its fees. Notwithstanding Gibson Dunn's verbal commitment to provide the Committee with documentation to support Evercore's fees in advance of the Objection Deadline, Gibson Dunn ultimately declined to provide any supporting documentation and invited the Committee to file this Objection.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) enter an order denying approval of Evercore's fees or limiting any approved fees to any reasonable amount that Evercore can demonstrate is reimbursable under the Final DIP Order; and (ii) grant such other and further relief that the Court deems just and proper.

Dated: August 11, 2022
Wilmington, Delaware

**FOX ROTHSCHILD LLP**

*/s/ Howard A. Cohen*
Howard A. Cohen (DE 4082)
Stephanie J. Slater (DE 6922)
919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
Email: hcohen@foxrothschild.com
Email: sslater@foxrothschild.com

-and-

Gordon E. Gouveia (admitted *pro hac vice*)
Jeffrey L. Widman (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
Facsimile: (312) 517-9201
Email: ggouveia@foxrothschild.com
Email: jwidman@foxrothschild.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*