**<u>EXHIBIT B</u>**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENJOY TECHNOLOGY, INC., *et al.*,[1] | ) | Case No. 22-10580 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 86, 191, 192 ~~&~~, 199, 248 & 313** |

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTORS TO ASURION, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated July 3, 2022 [Dkt. No. 86] (the "Motion") of Enjoy Technology, Inc., Enjoy Technology Operating Corp., and Enjoy Technology LLC (each a "Debtor," and collectively the "Debtors"), as debtors and debtors in possession in the above-captioned cases (the "Chapter 11 Cases"), pursuant to Bankruptcy Code sections 105, 363 and 365 of title 11 of the United States Code §§ 101–1532 (the "Bankruptcy Code") and Rules 2002, 6003, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of, among other things, (i) an order (the "Bidding Procedures Order")[2] (a) approving the bidding procedures (the "Bidding Procedures") in connection with the sale or disposition (the "Sale") of substantially all of the Debtors' assets (including the Transferred Assets), (b) authorizing the Debtors to enter into

---

[1]  The Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number, are Enjoy Technology, Inc. (6891), Enjoy Technology Operating Corp. (4543), and Enjoy Technology LLC (0230). The Debtors' headquarters are located at 3240 Hillview Avenue, Palo Alto, CA 94304.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the Purchase Agreement (as defined below), as applicable.

the Purchase Agreement (as defined below) and grant the Stalking Horse Bid Protections, subject to final Court approval and subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (c) scheduling an auction (the "Auction") and approving the form and manner of notice thereof, (d) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (e) scheduling a sale hearing (the "Sale Hearing") to approve the Sale and approving the form and manner of notice thereof; and (ii) an order (a) approving the Sale and other transactions contemplated by the Purchase Agreement free and clear of all Claims (as defined below), Interests (as defined below) and Encumbrances (as defined below) in accordance with the terms of the Purchase Agreement, (b) approving the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting certain related relief; and the Debtors having executed that certain Asset Purchase Agreement by and among the Debtors and Asurion, LLC, as buyer ("Buyer"), dated as of July 25, 2022 (as may be amended or modified from time to time in accordance with the terms thereof and this Order, the "Purchase Agreement"), attached hereto as **Exhibit 1**, contemplating the sale of the Transferred Assets to Buyer free and clear of any Claims, Interests, or Encumbrances (the "Sale Transaction"); and the Court having entered the Bidding Procedures Order on July 26, 2022 [Dkt. No. 199]; and the Auction having[having been held on August 9, 2022, in accordance with the Bidding Procedures] [ been cancelled in accordance with the Bidding Procedures [D.I. No. 266]; and the Debtors having selected Buyer as the Successful Bidder; and the Sale Hearing having been held on August 12, 2022; and the Court having reviewed and considered the relief sought in the Motion, the Purchase Agreement, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this

Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances of the Chapter 11 Cases and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the [———]Puntus Declaration [Dkt. No. [——]]192], and the *Supplemental Declaration of Marc D. Puntus In Support of the Sale of Substantially all of the Debtors' Assets* [Dkt. No. 313] (the "Supplemental Puntus Declaration"), filed contemporaneously herewith, and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS THAT:[3]**

**Jurisdiction and Venue**

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

**Statutory Predicates**

B.      The statutory predicates for the relief requested in the Motion are sections 105, 363 and 365 of the Bankruptcy Code.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1.

---

[3]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Final Order**

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C.

§ 158(a).

**Notice of the Purchase Agreement, Assumption and Assignment of Assumed Contracts,
Sale Transaction, Sale Hearing and Bidding Procedures Order**

D.      On June 30, 2022 (the "Petition Date"), the Debtors commenced these Chapter 11

Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Since the

Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      On July 11, 2022, the Office of the United States Trustee for the District of

Delaware appointed the official committee of unsecured creditors pursuant to section 1102 of the

Bankruptcy Code [Dkt. No. 110].

F.      The Debtors gave due and proper notice of the proposed Sale, Auction, and Sale

Hearing on July 26, 2022 [Dkt. No. 201] (the "Sale Notice").  The Sale Notice constituted good,

sufficient, and appropriate notice of the Sale under the particular circumstances of these Chapter

11 Cases and no further notice need be given with respect to the proposed Sale.  As provided by

the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has

been afforded to all interested persons and entities.  Other parties interested in bidding on the

Transferred Assets were provided, pursuant to the Bidding Procedures Order, sufficient

information to make an informed judgment on whether to bid.

G.      The Debtors also gave due and proper notice of the potential assumption and

assignment of each executory contract or unexpired lease available to be assumed by the Debtors

and assigned to Buyer to each non-debtor party under each such executory contract or unexpired

lease as reflected on the notices of assumption, sale and assignment of the Assumed Contracts filed

on July 29, 2022 [Dkt. No. 228] (the "Assumption and Assignment Notice").  Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assumed Contracts are hereby deemed to consent to the relief granted herein unless otherwise provided in this Order.

H.    As evidenced by the affidavits of service [Dkt Nos. —101, 139, 140, 188, 207, 208, 209, 236, 238, 253, 262, 286 & 295] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order and the Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order and the Sale Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Purchase Agreement, this Order or the Sale Transaction is or shall be required.

I.    A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

**Compliance with the Bidding Procedures Order**

J.        As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order.  The Debtors and their professionals have adequately and appropriately marketed the Transferred Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Transferred Assets.

K.        The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Transferred Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

L.        The Bidding Procedures Order is incorporated herein by reference.

M.        Buyer is the Successful Bidder, and the Purchase Agreement is the Successful Bid, for the Transferred Assets in accordance with the Bidding Procedures Order.  Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement, and the Sale Transaction and the Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

**Business Judgment**

N.        The Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Purchase Agreement, including but not limited to the Credit Bid (defined below) and the treatment and procedure with respect to the Customer Holdback Amount, (i)

constitutes the highest and best offer received by the Debtors for the Transferred Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

O.       The Debtors' determination that the consideration provided by Buyer under the Purchase Agreement, including but not limited to the Credit Bid and the treatment and procedure with respect to the Customer Holdback Amount, constitutes the highest and best offer for the Transferred Assets ~~constitutes~~ is a valid and sound exercise of the Debtors' business judgment.

P.       Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of their obligations under the Purchase Agreement, including, but not limited to, the fact that (i) the consideration provided by Buyer under the Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Transferred Assets; and (ii) unless the Sale Transaction is concluded expeditiously as provided for in the Motion and pursuant to the Purchase Agreement, recoveries of creditors will be diminished.

Q.       The releases provided under the Purchase Agreement are fair and reasonable, are in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and are being provided in return for fair consideration.

**Corporate Authority**

R.       Subject to entry of this Order, the Debtors (i) have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) have all of the necessary corporate power and authority to consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale

Transaction and the assumption and assignment of the Assumed Contracts, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, need no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Purchase Agreement or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

**Good Faith**

S.      The sales process engaged in by the Debtors and Buyer, [including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order], and the negotiation of the Purchase Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  None of the Debtors or Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

T.      The Debtors and Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures.  The Debtors, and their respective management, board of directors, board of managers (or comparable governing authority), employees, agents, and representatives, and Buyer and its employees, agents, advisors and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion of or fraud of any kind.  Buyer subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for

the Transferred Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

U.       Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Debtors or Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtors' estates.  The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction and Buyer would not consummate the Sale Transaction without such protections.

V.       The form and total consideration to be realized by the Debtors under the Purchase Agreement, including but not limited to the Credit Bid and the treatment and procedure with respect to the Customer Holdback Amount, constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Transferred Assets.

W.       Neither Buyer nor any of its affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of any of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity of directors, managers, controlling shareholders, or members exists between the Debtors and Buyer.

### No Fraudulent Transfer

X.       The consideration provided by Buyer for the Transferred Assets pursuant to the Purchase Agreement, including but not limited to the Credit Bid and the treatment and procedure

with respect to the Customer Holdback Amount, (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and each state, territory, possession and the District of Columbia.

Y.      The Purchase Agreement was not entered into, and none of the Debtors or Buyer has entered into the Purchase Agreement or proposes to consummate the Sale Transaction, for the purpose of (i) escaping liability for any of the Debtors' debts or (ii) hindering, delaying or defrauding the Debtors' present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

## Free and Clear

Z.      The transfer of the Transferred Assets to Buyer will be legal, valid, and effective transfers of the Transferred Assets, and will vest Buyer with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and Encumbrances, including, without limitation, the following:  all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments,

demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment

rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration

rights, product liability claims, alter-ego claims, environmental rights and claims (including,

without limitation, toxic tort claims), labor rights and claims, employment rights and claims,

pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of

any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising

in any way in connection with any agreements, acts, or failures to act, reclamation claims,

obligation claims, demands, guaranties, option rights or claims, rights, contractual or other

commitment rights and claims, and all other matters of any kind and nature, whether known or

unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11

Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including

claims otherwise arising under any theory, law or doctrine of successor or transferee liability or

related theories (all of the foregoing, including, without limitation, liens and liabilities, but

excluding Assumed Liabilities, collectively being referred to in this Order as "Claims" and, as

used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that

term is defined and used in the Bankruptcy Code, including section 101(5) thereof). The term

"Encumbrances" shall mean any mortgage, lien, pledge, security interest, charge, easement,

covenant, right of way, title defect, other survey defect, or dispute as to the ownership of a

Transferred Asset.

AA.    The Debtors, to the extent permitted by applicable law, may transfer the Transferred Assets free and clear of all Claims, other interests of any kind or nature whatsoever ("Interests"), and Encumbrances, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

BB.    Those (a) holders of Claims, Interests, or Encumbrances, and (b) non-Debtor parties to the Assumed Contracts, in each case who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Claims, Interests, or Encumbrances, and (ii) non-Debtor parties to the Assumed Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

CC.    The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

DD.    Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all Claims, Interests, and Encumbrances, or (ii) if Buyer would, or in the future could, be liable for or subject to any such Claims, Interests, or Encumbrances.  Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of Buyer, its respective affiliates, its respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner,

whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims, Interests, or Encumbrances.

EE.    Not transferring the Transferred Assets free and clear of all Claims, Interests, and Encumbrances would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Claims, Interests, and Encumbrances would be of substantially less benefit to the Debtors' estates.

FF.    Neither Buyer nor any of its affiliates are a mere continuation of the Debtors or their estates, there is no continuity or common identity between Buyer, any of the Debtors, or any of their respective affiliates, and there is no continuity of enterprise between Buyer, any of the Debtors, or any of their respective affiliates.  Neither Buyer nor any of its affiliates are holding themselves out to the public as a continuation of any of the Debtors.  Neither Buyer nor any of its affiliates are a successor to any of the Debtors or their estates and none of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of Buyer or any of its affiliates with or into any of the Debtors.

GG.    Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of Buyer, its affiliates, its and their respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the

Sale Transaction and the assumption and assignment of the Assumed Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

### Validity of Transfer

HH.    The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

II.    The Transferred Assets constitute property of the Debtors' estates and good title to the Transferred Assets of the Debtors is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and lawful owners of the Transferred Assets, including but not limited to the Sellers-Owned Intellectual Property, and no other person has any ownership right, title, or interest therein.

JJ.    The Purchase Agreement has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Purchase Agreement, shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.  The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

KK.    The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the Purchase Agreement and this Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code.  Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

## Assumed Contracts

LL.    The assumption and assignment of the Assumed Contracts pursuant to the Assumption and Assignment Notice, the terms of this Order and the Purchase Agreement is integral to the transactions contemplated by the Purchase Agreement and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

MM.    Pursuant to the terms of the Purchase Agreement and this Order, on or before the Closing Date, as applicable pursuant to the terms of this Order, the Debtors or Buyer, as applicable, shall have, except as otherwise provided in the Purchase Agreement or this Order, or as otherwise expressly agreed to between the Debtors or Buyer, as applicable, and such counterparty:  (i)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of future performance

under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.  For the avoidance of doubt, ~~all~~ (i) the Cure Costs shall be the responsibility of the Debtors and paid on or prior to the Closing Date, (ii) the Debtors shall, on or prior to the Closing Date, pay any amounts that become due between the Sale Hearing and the Closing Date with respect to any Assumed Contract, and (iii) the Debtors shall, in the ordinary course, pay any amounts that become due after the Closing Date with respect to any Assumed Contract to the extent it is not an Assumed Liability.

**Compelling Circumstances for an Immediate Sale**

NN.    To maximize the value of the Transferred Assets, it is essential that the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, occur within the time constraints set forth in the Purchase Agreement.  Time is of the essence in consummating the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

OO.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  The transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, neither impermissibly restructure the

rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

PP.     The legal and factual bases set forth in the Motion , and the [_____] in the Puntus Declaration and Supplemental Puntus Declaration filed in support thereof, and presented at the Sale Hearing establish just cause for the relief granted herein.

### Credit Bid

QQ.     Immediately upon Closing of the Sale Transaction, and subject to paragraph 34 38 hereof, the full outstanding amount of the DIP Obligations (as defined in the Final DIP Financing Order),[4] including but not limited to principal, interest, fees, costs, expenses and fees (including the Transaction Fee (as defined in the Final DIP Financing Order)) shall be deemed to be discharged and applied to the Purchase Price pursuant to the terms of the Purchase Agreement (the "Credit Bid").

RR.     The Challenge Period (as defined in the Final DIP Financing Order) has expired as to all parties in the Chapter 11 Cases.  Accordingly, all stipulations in the Final DIP Financing Order (including the releases of the DIP Lender, and the Prepetition Lender (each as defined in the Final DIP Financing Order)) are unconditionally effective and binding on all parties in interest. As such, Buyer holds an allowed secured claim in the full amount of the DIP Obligations (including the DIP Roll-Up Loans (as defined in the Final DIP Financing Order)), which claim is not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, recoupment, subordination, other claim, cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise (the "Allowed Secured DIP Claims").

---

[4]     The Final DIP Financing Order means that *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Dkt. No. 200].

On account of the Allowed Secured DIP Claims, Buyer is a secured creditor of the Debtors, holding valid, binding, enforceable, and perfected security interests in, on and against the Debtors, their estates, and property of the estates.  As contemplated under the Purchase Agreement and pursuant to the Bidding Procedures Order and the Final DIP Financing Order, Buyer was and is authorized to credit bid any or all of the Allowed Secured DIP Claims under section 363(k) of the Bankruptcy Code.

SS.    The Credit Bid shall constitute consideration, in whole or in part, for the Transferred Assets as to which Buyer, as DIP Lender, has a perfected, valid, and enforceable security interest (the "Credit Bid Transferred Assets").  The cash portion of the Purchase Price and any Assumed Liabilities shall constitute consideration for any Transferred Assets that do not constitute Credit Bid Transferred Assets.

TT.    Pursuant to the Purchase Agreement and sections 363(b) and 363(k) of the Bankruptcy Code, Buyer is authorized to credit bid the Allowed Secured DIP Claims, which Credit Bid is a valid and proper bid as contemplated under the Purchase Agreement and is a Qualified Bid pursuant to the Bidding Procedures Order and the Bidding Procedures.

UU.    All actions taken by Buyer arising from or relating to its exercise of the right to credit bid the Allowed Secured DIP Claims was proper.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.    The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, the

Credit Bid, the treatment and procedure with respect to the Customer Holdback Amount, the releases, and the assumption and assignment of the Assumed Contracts is authorized and approved.

2.      Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

### Approval of the Purchase Agreement

3.      The Purchase Agreement, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction, the Credit Bid, the treatment and procedure with respect to the Customer Holdback Amount, the releases, and the assumption and assignment of the Assumed Contracts (but subject to Buyer's rights with respect thereto pursuant to the Purchase Agreement) and all the terms and conditions thereof, are approved.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

4.      The Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by Buyer to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to Buyer of all Transferred Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order; and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of

transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to Buyer, or reducing to possession, the Transferred Assets, all without further order of this Court. The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing Date, any expenses or costs that are required to be paid by the Debtors under the Purchase Agreement, this Order or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.      All persons and entities, including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtors or the Transferred Assets owned by the Debtors, arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets owned by the Debtors, the operation or ownership of the Transferred Assets by the Debtors prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Buyer, its affiliates, successors, assigns, its property or the Transferred Assets, including, without limitation, taking any of the following actions with respect to any Claims: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Buyer, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (c) creating, perfecting, or enforcing

any Claim against Buyer, its affiliates, any of their respective successors, assigns, assets (including the Transferred Assets), and/or properties; (d) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Buyer, its affiliates or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Debtors' ability to transfer the Transferred Assets to Buyer in accordance with the terms of this Order and the Purchase Agreement.  No such Person shall assert or pursue against Buyer or its affiliates, successors or assigns any such Claim.

6.     The sale of the Transferred Assets to Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Transferred Assets are located, and the sale of the Transferred Assets to Buyer may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

7.     In accordance with, and pursuant to, section 12.4 of the Purchase Agreement, at any time prior to the Closing Date, Buyer may assign any or all of its rights and obligations under the Purchase Agreement (including the right to receive the Transferred Assets) without the prior written consent of the Debtors and without further order of this Court to any Affiliate of Buyer or in connection with a business combination (as applicable, the "Assignee") provided that no such assignment will relieve Buyer of its obligations under the Purchase Agreement.  Following such

assignment, the Assignee shall have the benefit of all factual findings, orders, and other provisions of this Order related to Buyer.

### Transfer of the Transferred Assets Free and Clear

8.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Transferred Assets shall be sold free and clear of all Claims, Interests, and Encumbrances, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Transferred Assets, subject to any claims and defenses the Debtors may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

9.    At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Transferred Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Claims, Interests, and Encumbrances.  Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest Buyer with good and marketable title to, the Transferred Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Transferred Assets are directed to surrender possession of the Transferred Assets to Buyer or its designees on the Closing Date or at such time thereafter as Buyer may request.

10.    This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of

law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Purchase Agreement.

11.     Except as otherwise expressly provided in the Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, employees, former employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtors or the Transferred Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Transferred Assets, the ownership, sale or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to Buyer, are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against Buyer, its successors or assigns, their property or the Transferred Assets.  Following the Closing, no holder of any Claim or Encumbrance shall interfere with Buyer's title to or use and enjoyment of the Transferred Assets based on or related to any such Claim or Encumbrance, or based on any action or omission of the Debtors, including any action or omission the Debtors may take in the Chapter 11 Cases.

12.     The Debtors are authorized and directed to execute such documents as may be necessary to release any Claims, Interests, or Encumbrances of any kind against the Transferred Assets as such Claims, Interests, or Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, *lis pendens* or other documents or

agreements evidencing Claims, Interests, or Encumbrances against or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims, Interests, or Encumbrances that the person or entity has with respect to the Transferred Assets, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transferred Assets; (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims, Interests, or Encumbrances against Buyer and the applicable Transferred Assets; (c) the Debtors' creditors and the holders of any Claims, Interests, or Encumbrances are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims, Interests, or Encumbrances in the Transferred Assets; and (d) Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims, Interests, or Encumbrances with respect to the Transferred Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized and directed to accept this Order for filing or recording.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Transferred Assets free and clear of Claims, Interests, and Encumbrances shall be self-executing, and none of the Debtors or Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13.    To the maximum extent permitted under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Transferred Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Buyer with respect to the Transferred Assets as of the Closing Date.  To the extent Buyer cannot operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while Buyer, with assistance from the Debtors (and at Buyer's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to Buyer.

14.    No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Transferred Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

## No Successor or Transferee Liability

15.    Upon the Closing Date, except as provided in the Purchase Agreement, the entrance of this Order and the Purchase Agreement shall mean that Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated by the Purchase Agreement, including, without

limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the transfer or operation of the Transferred Assets, shall not be deemed to: (a) be a legal successor or successor employer to the Debtors (including with respect to any health or benefit plans), or otherwise be deemed a successor to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or (iii) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

16.     Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither Buyer nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtors related to the Transferred Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates. By virtue of Buyer's purchase of the Transferred Assets, neither Buyer nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN) or products liability law, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtors' employment agreements or health or benefit plans, any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract (collectively, with the potential claims set forth in paragraph 15, "Successor or Transferee Liability"). Buyer would not have acquired the Transferred Assets but for the foregoing protections against Successor or Transferee Liability.

17.     As a condition to Closing, the Debtors shall pay in cash the Pre-Closing Compensation and Benefits Liabilities pursuant to Section 8.7(b) of the Purchase Agreement.

18.    None of Buyer or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement and the entry into and consummation of the sale of the Transferred Assets, except as expressly provided in the Purchase Agreement and this Order.

19.    Nothing in this Order or the Purchase Agreement shall require Buyer or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, former employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Purchase Agreement and the Sale Transaction.

**Good Faith; Arm's Length Sale**

21.    The Purchase Agreement has been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, are and have been undertaken, by the Debtors, Buyer and their respective representatives at arm's length, without collusion and in "good faith," as that term

is defined in section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement, and shall not permit the unwinding of the Sale Transaction.  Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code

22.    None of the Debtors or Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts, to be avoided, or for costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by Buyer for the Transferred Assets under the Purchase Agreement, including but not limited to the Credit Bid, is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of the Assumed Contracts**

23.    Except as otherwise expressly provided in the Purchase Agreement or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts, set forth in **Exhibit 2** (the "Assumed Contracts Exhibit") attached hereto, which may be subsequently modified at any time that is three (3) days prior to the Closing Date and upon Buyer's delivery of written notice to the Debtors, to add or remove certain contracts or leases pursuant to the terms of the Purchase Agreement, to Buyer free and clear of all Claims, Interests, and Encumbrances and (b) execute and deliver to Buyer such documents or other instruments as may be reasonably requested by Buyer to assign and transfer the Assumed Contracts to Buyer.

24.    Unless otherwise ordered by the Court, the Cure Costs listed on the Assumed Contracts Exhibit are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code. ~~All Cure Costs, if any, shall be paid by the Debtors on or prior to the Closing Date.~~ Upon the payment of the Cure Costs, if any, by the Debtors, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Costs shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause. After the payment of the Cure Costs by the Debtors, none of the Debtors or Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Debtors' obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date. For the avoidance of doubt, (i) the Cure Costs shall be the responsibility of the Debtors and paid on or prior to the Closing Date, (ii) the Debtors shall, on or prior to the Closing Date, pay any amounts that become due between the Sale Hearing and the Closing Date with respect to any Assumed Contract, and (iii) the Debtors shall, in the ordinary course, pay any amounts that become due after the Closing Date with respect to any Assumed Contract to the extent it is not an Assumed Liability.

25.    The Debtors are authorized to add an executory contract or unexpired lease to the list of Potentially Assigned Agreements set forth on Schedule A to the Assumption/Assignment Notice [Dkt. No. 228] (each, a "Supplemental Assumption/Assignment Notice") by filing such Supplemental Assumption/Assignment Notice and serving such Supplemental Assumption/Assignment Notice on each counterparty. Each counterparty listed on a Supplemental

Assumption/Assignment Notice shall have a period of ten (10) days to object to (i) the Cure Amount set forth therein and (ii) to the extent the applicable contract or lease was not previously listed on the Assumption/Assignment Notice, adequate assurance of future performance by Buyer, each in accordance with the procedures set forth in the Assumption/Assignment Notice.  If no objections are timely received by the applicable objection deadline set forth in the notice, the contract or lease may be assumed and assigned in accordance with the procedures set forth in this Order.

25.26.  In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or Cure Cost of any executory contract or unexpired lease proposed to be an Assumed Contract, the assumption and assignment of such executory contract or unexpired lease, and payment of any applicable Cure Costs, shall be made upon (a) the entry of an order of the Court resolving any such dispute and upon the election of Buyer to retain such executory contract or unexpired lease as an Assumed Contract, or (b) the consensual resolution of such dispute as may be agreed by Buyer and such counterparty and, solely with respect to disputes regarding Cure Costs, the Debtors.  Upon an election of Buyer to designate an executory contract or unexpired lease as an Excluded Contract, Buyer shall have no liability whatsoever to the counterparty to such executory contract or unexpired lease or the Debtors.

26.27.  To the extent any non-Debtor counterparty to an Assumed Contract has failed to timely object to a proposed Cure Cost, such Cure Cost has been and shall be deemed to be finally determined as the Cure Cost listed on the Assumption and Assignment Notice and Assumed Contracts Exhibit and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  The non-Debtor counterparty to an Assumed Contract is forever bound by the applicable Cure Cost and, upon

payment of the Cure Costs as provided herein and in the Purchase Agreement, is hereby enjoined from taking any action against Buyer with respect to any claim for cure under the Assumed Contract.

27.28.  Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

28.29.  Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment, including for purposes of sections sections 365(c)(1)(B) and 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise, if such party failed to object to the assumption and assignment of such Assumed Contract.

29.30.  Each Assumed Contract constitutes an executory contract or unexpired lease under the Bankruptcy Code and all requirements and conditions under section 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Assumed Contracts have been, or will be, satisfied.  Upon Buyer's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with sections 363 and 365 of the Bankruptcy Code, (a) Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Assumed Contracts, (b) Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (c) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

30.31.  Buyer has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

31.32.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or Buyer as a result of the assumption, assignment and sale of the Assumed Contracts.  Subject to the terms of the Purchase Agreement, the validity of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between any of the Debtors or their affiliates, and another party to an Assumed Contract regarding the payment of any amount.  Upon assignment to Buyer, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by Buyer in accordance with their respective terms.

32.33.  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or Buyer any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of and including the Closing Date under the Purchase Agreement or arising by reason of the consummation of transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction, the assumption and assignment of the Assumed Contracts.

33.34.  All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Buyer, and shall not charge the Debtors or Buyer for any instruments, applications, consents or other documents which may be required or

requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Transferred Assets.

35.     Notwithstanding anything herein to the contrary, if any counterparty to an Assumed Contract has, consistent with the Bidding Procedures Order or pursuant to any extension agreed to by the Debtors and Buyer, timely filed an objection to the Debtors' proposed Cure Costs, to assumption and assignment of such Assumed Contract, or proof of adequate assurance of future performance, such objections shall be preserved and shall, if not consensually resolved, be addressed at the Assumption/Assignment Hearing.

36.     Prior to the Closing and subject to the prior written consent of Buyer, the Debtors, pursuant to section 363(b) of the Bankruptcy Code, are (i) authorized to enter into any amendments and modifications to the Assumed Contracts, and (ii) authorized and empowered to take any and all steps and to perform such other and further actions as are necessary to carry out, effectuate, or otherwise enforce the terms, conditions and provisions of any such amendments and modifications, without further notice to or action, order, or approval of the Court.  To the extent that any amendment or modification of an Assumed Contract necessitates, or the Debtors deem it advisable to obtain, entry of a separate order of the Court approving such an amendment or modification, the Debtors may submit an order under certification of counsel relying upon the authorization contained in this paragraph.  To the extent the Debtors, with the prior written consent of Buyer, have entered into an agreement with a counterparty (or their counsel) to an Assumed Contract that conflicts with the terms of this Order, such agreement shall govern solely to the extent of such conflict.

**Credit Bid and Satisfaction of DIP Obligations**

34.37.  The Credit Bid as contemplated under the Purchase Agreement was and is a valid and proper bid under sections 363(b) and 363(k) of the Bankruptcy Code, and together with the rest of the consideration under the Purchase Agreement, was a Qualified Bid pursuant to the Bidding Procedures Order.  Subject to paragraph 34 38 below, upon the Closing, the Allowed Secured DIP Claims shall be deemed satisfied in accordance with the Purchase Agreement, and such obligations shall be discharged in full.  Upon the Closing, the DIP Liens and Adequate Protection Liens (each as defined in the Final DIP Financing Order) shall be deemed released as to all of the DIP Collateral, and the DIP Lender shall have no further obligation to make any extension of credit under the DIP Credit Agreement (as defined in the Final DIP Order).

35.38.  As a condition to Closing of the Sale Transaction, the Debtors shall indefeasibly pay in full in cash all reasonable and documented fees and expenses incurred by the DIP Professionals (as defined in the Final DIP Financing Order), which may include reasonable estimates for fees or expenses through the Closing Date.

36.39.  Upon the Closing of the Sale, the Termination Fee shall be immediately due and owing to Buyer without further action or notice, and shall be included in the Credit Bid.

**Related Relief**

37.40.  The Debtors are hereby authorized and directed to change their current names pursuant to Section 8.15 of the Purchase Agreement.

41.    Notwithstanding anything to the contrary in this Order or the Purchase Agreement, the PMA Collateral (as defined in the Final DIP Financing Order) and as addressed and supplemented in accordance with that Program Agreement Endorsement, dated as of August 1, 2022 (the "New Program Endorsement"), by and between Pennsylvania Manufacturers' Association Insurance Company, Pennsylvania Manufacturers Indemnity Company, and

Manufacturers Alliance Insurance Company (collectively, the "PMA Companies"), on the one hand, and Enjoy Technology LLC, on the other hand, are hereby expressly excluded from the Sale Transaction and deemed Excluded Assets.  The rights of the PMA Companies with respect to the PMA Collateral and collateral provided under the New Program Endorsement shall survive the Sale and the Closing.  Further, the insurance contracts or any contract for fleet auto and workers' compensation between the Debtors and the PMA Companies are not executory contracts and will irrevocably not constitute Assumed Contracts under the Purchase Agreement or this Order.

42.    The Debtors are authorized to enter into a transition services or similar agreement with Buyer with respect to post-Closing operations of the Debtors and/or Buyer, subject to agreement between the Debtors and Buyer on terms and conditions thereof; provided, however, that any such transition services or similar agreement shall be filed with the Court, and parties in interest shall have five (5) days to file a written objection to the Debtors' entry into such transition services or similar agreement.  In the event that a party in interest timely files an objection to any transition services or similar agreement, the Court shall consider such objection on expedited notice.  In the event no party in interest timely files an objection to any transition services or similar agreement, the Debtors may enter into and perform under such transition services or similar agreement without any further notice or Court authorization.

38.43.  Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the Purchase Agreement.

39.44.  No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Transferred Assets sold, transferred or

conveyed to Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the sale of the Transferred Assets.

40.45.  Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any Excluded Asset.

41.46.  All entities that are presently, or on the Closing Date may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of the Transferred Assets to Buyer on or prior to the Closing Date or such later date that such party and Buyer mutually agree.

42.47.  To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement, the terms of this Order shall govern.

43.48.  This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtors, all interest holders of the Debtors, all non-Debtor parties to the Assumed Contracts, any Court-appointed committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Purchase Agreement and Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with sections 105 and 349 of the

Bankruptcy Code) that this Order and the rights granted to Buyer hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the Debtors' inability to satisfy in full all administrative expense claims of the Debtors' estates shall not be a basis for termination, rejection or avoidance (as applicable) of the Purchase Agreement or the Sale Transaction.

44.49.  This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes involving the Customer Holdback Amount or with any counterparty to any executory contract or unexpired lease of the Debtors (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Transferred Assets; provided, however, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Purchase Agreement, the Bidding Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Debtor and its assets, including the Transferred Assets, against any Claims and successor and transferee liability and to enter orders, as appropriate, pursuant to sections 105(a) or 363 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Transferred Assets to Buyer.

45.50.  At any time prior to the Closing Date, Buyer or the Debtors may terminate the Purchase Agreement pursuant to the terms thereof without any penalty or liability to Buyer or the Debtors (or their estates), except as set forth in the Purchase Agreement.

46.51.  The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

47.52.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and Buyer may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

48.53.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code, to give any notice permitted by the Purchase Agreement or to enforce any of its remedies under the Purchase Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

49.54.  The provisions of this Order are non-severable and mutually dependent.

55.     Notwithstanding any other provision of this Order, from the cash proceeds received by the Debtors for the sale of any of the Debtors' assets located within Bexar County, Harris County and Tarrant County's (collectively, the "Texas Tax Authorities") taxing jurisdiction, the amount of $4,800 shall be set aside by the Debtors and segregated for bookkeeping purposes as adequate protection for the purported secured claims of the Texas Tax Authorities.  The liens of the Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors.  These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Texas Tax Authorities, nor a cap on the amounts they may be entitled to receive.  Furthermore, the claims and liens of the Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such claims or liens.  These funds may be distributed only upon agreement between the Texas Tax Authorities and the Debtors, or by subsequent order of the Court, duly noticed to the Texas Tax Authorities.

56.     Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement, no contract between the Debtors and Oracle America, Inc.,  including in its capacity as successor in interest to NetSuite, Inc. ("Oracle"), will be assumed and/or assigned without (1) payment of the applicable Cure Amount set forth in Exhibit 2 for the Oracle Contracts (defined below); and (2) execution by the Debtors and Buyer (or the Assignee as applicable), of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order (provided, however, in no event shall Buyer be responsible for any Excluded Liabilities, which shall remain the sole and exclusive obligations of Debtors).  In addition, between the date of Closing and December 15, 2022 ("Transition Period"),  the Debtors, subject to terms to be agreed by Buyer and Oracle prior to Closing, may use certain limited services ("Oracle Services")

provided by Oracle pursuant to active agreements ("Oracle Contracts") provided that no provision of this Order or any agreement between the Debtors and Buyer with respect to the provision of transition services following the Closing shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent. At the end of the Transition Period, the Debtors must immediately cease use of the Oracle Services, absent Oracle's and Buyer's express written consent.

50.57.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction.

51.58.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

## Exhibit 1

**Purchase Agreement**

## Exhibit 2

272763687 v2

## Assumed Contracts Exhibit