| | |
|---|---|
| In re: | Chapter 11 |
| ENJOY TECHNOLOGY, INC., *et al.*[1] | Case No. 22-10580 (JKS) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO (I) GIBSON, DUNN & CRUTCHER LLP AND (II) BASS, BERRY & SIMS PLC'S,
INVOICES FOR REIMBURSEMENT OF FEES AS DIP PROFESSIONALS**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its

undersigned proposed counsel, hereby files this *Objection of the Official Committee of Unsecured*

*Creditors to (I) Gibson, Dunn & Crutcher LLP and (II) Bass, Berry & Sims PLC's, Invoices for*

*Reimbursement of Fees as DIP Professionals* (the "Objection").  In support of the Objection, the

Committee states as follows:

**PRELIMINARY STATEMENT**

1.      The Committee files this Objection to the requests of Gibson, Dunn & Crutcher

LLP ("Gibson Dunn"), and Bass, Berry & Sims PLC ("Bass Berry"), ("Bass Berry and together

with Gibson Dunn, the "DIP Professionals")[2] for reimbursement of fees and expenses as DIP

Professionals.  In short, this Objection is focused on the fact that the DIP Professionals' fees are

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Enjoy Technology, Inc. (6891); Enjoy Technology Operating Corp. (4543); Enjoy Technology LLC (0230). The location of the Debtors' service address in these chapter 11 cases is 3240 Hillview Avenue, Palo Alto, CA 94304.

[2] Evercore Group L.L.C. ("Evercore") is also a DIP Professional, as defined in the Final DIP Order, however, the focus of this Objection is solely with respect to Gibson Dunn and Bass Berry.  The Committee's objection to Evercore's fees is filed at Docket Entry No. 310. *See Objection of the Official Committee of Unsecured Creditors to Evercore L.L.C.'s Invoice for Reimbursement as a DIP Professional*.

not covered by the relief requested in the DIP Motion, the expense reimbursement provisions of the DIP Term Sheet that was attached to the DIP Motion, or the fees contemplated by the Final DIP Order. Further, the Invoices submitted by the DIP Professionals are merely summary fee statements, and it is impossible for the Committee to fully analyze whether the fees are reasonable and reimbursable under the terms of the Final DIP Order.

2.      Professional fees in these chapter 11 cases continue to compound, which in turn reduces the likelihood of general unsecured creditors achieving a 100% recovery, as was advertised at the outset of the case. *See e.g. Declaration of John Boken in Support of Chapter 11 Petitions and First Day Motions* at ¶ 46. ("The Debtors anticipate that the proposed purchase price to be received from Asurion will be sufficient to satisfy all secured and unsecured claims in full."). Indeed, because DIP Professional fees are a direct deduct from the Asurion purchase price under the terms of the APA, any fees awarded and paid to the DIP Professionals will diminish unsecured creditor recoveries in the case. Therefore, the Committee requests that the Court deny approval of the DIP Professionals' fees or limit any approved fees to any reasonable amount that the DIP Professionals can demonstrate are reimbursable under the Final DIP Order.

**BACKGROUND**

3.      On June 30, 2022 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4.     No trustee has been appointed, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.     On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Senior Secured Lender, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 11] (the "DIP Motion").

6.     On July 1, 2022, the Court entered the *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, and (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Docket No. 83] (the "Interim DIP Order").

7.     After the hearing on the DIP Motion and the Interim DIP Order, on July 26, 2022, the Court entered the *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Superpriority Administrative Expense Claims, (D) Granting Adequate Protection to the Prepetition Lender, (E) Modifying the Automatic Stay, and (F) Granting Related Relief* [Docket No. 200] (the "Final DIP Order").[3]  Attached as Exhibit 1 to the Final DIP Order is the DIP Term Sheet.

8.     Additionally, on July 26, 2022, the Court entered the *Order (I) (A) Approving Certain Bidding Procedures* and the *Form and Manner of Notice Thereof, (B) Scheduling an*

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Final DIP Order.

*Auction and a Hearing on the Approval of the Sale of all or Substantially all of the Debtors' Assets,*

*(C) Establishing Certain Assumption and Assignment Procedures and Approving Manner of*

*Notice Thereof, and (D) Scheduling a Hearing to Approve Assumption and Assignment of the*

*Assumed Contracts; and (II) Granting Related Relief* (the "Bidding Procedures Order") [D.I. 199].

9. Asurion, LLC ("Asurion") either directly or through one or more of its US affiliates, is the DIP lender (the "DIP Lender"). Asurion is also the stalking horse bidder (the "Stalking Horse Bidder") *See e.g.* D.I. 191. The DIP Lender retained certain professionals or consultants including, Gibson Dunn, Pachulski, Bass Berry, and Evercore. *See* Final DIP Order, ¶ 24(a).

10. "The Debtors are authorized and directed to pay, without further Court order, the ***reasonable*** and documented fees and expenses incurred by … [the DIP Professionals], whether incurred before or after the Petition Date or in connection with the Cases (in any capacity) and the DIP Facility, including the ***reasonable*** and documented out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of DIP Professionals) of the DIP Lender, for enforcement costs and documentary taxes associated with the DIP Facility and the transactions contemplated thereby (collectively, the "DIP Professional Fees"). *See* Final DIP Order, ¶ 24(a) (emphasis added).

11. In accordance with the Final DIP Order, on August 2, 2022, each of the DIP Professionals provided copies of their first invoices (the "Invoices") to counsel for Debtors, the U.S. Trustee, and counsel to the Committee (the "Fee Notice Parties"). The DIP Professionals' Invoices are summarized below:

| DIP Professional | Time Period | Total Outstanding Balance Due |
|---|---|---|
| Gibson Dunn | July 1 – 31, 2022 | $425,217.76 |
| Bass Berry | June 30 – July 31, 2022 | $460,007.00 |

**Total**                                                                 **$885,224.76**

12.     Under the Final DIP Order, the Fee Notice Parties are afforded ten (10) calendar days to object to the DIP Professionals' fees. *See* Final DIP Order ¶ 24(a). The Committee's deadline to object to the Invoices is August 12, 2022 (the "Objection Deadline").

## OBJECTION

13.     The Final DIP Order expressly preserves the Committee's right to object to DIP Professional fees on reasonableness grounds. *See* Final DIP Order, at ¶ 24(a). After review of the summary fee statements submitted with the DIP Professionals' invoices, it is apparent that the DIP Professionals are seeking reimbursement of significant sale-related fees and expenses in addition to fees and expenses associated with DIP financing. The DIP Motion, the DIP Term Sheet, and the Final DIP Order do not contemplate payment of sale-related expenses to the DIP Professionals. Further, due to the summary nature of the invoices, the Committee is not able to determine the reasonableness of the requested fees and reserves its rights to do so.

14.     The express language of the DIP Motion and the DIP Term sheet do not permit the DIP Professionals to be reimbursed for sale related expenses. Specifically, the DIP Motion states that, through the Interim Order, the Debtors were authorized and directed "to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, *letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements* of the DIP Lender's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents." *See* DIP Motion, at ¶ (1)(e) (emphasis added).

15. The DIP Term sheet also limits payment to expenses that deal directly with the DIP Loan Documents and the funding of all Loans under the DIP Facility, and not any sale related expenses. These two separate transactions must not be conflated even though Asurion is both the DIP Lender and the Stalking Horse Bidder. The Expenses and Offset section of the DIP Term Sheet states as follows:

> The Borrowers and each Guarantor shall jointly and severally pay (i) (x) all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender (including, but limited in the case of counsel, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender's counsels, GDC and BBS, and, to the extent necessary, one firm of local counsel engaged by the Lender in connection with the Debtors' Chapter 11 Cases, and any successor counsel to each), in each case in connection with the negotiations, preparation, execution and delivery of the ***DIP Loan Documents*** and the funding of all Loans under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained by the Lender and its counsels and professional advisors in connection with the ***DIP Facility, the DIP Loan Documents*** or the transactions contemplated thereby, the administration of the ***DIP Facility*** and any amendment or waiver of any provision of the ***DIP Loan Documents*** and (ii) without duplication, all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the Lender (including, but limited in the case of counsels, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of GDC and BBS (and any successor counsel) as outside counsels to the Lender (and any successor counsel), and, to the extent necessary, one firm of local counsel engaged by the Lender in each relevant jurisdiction, and any successor counsel to such primary counsel and local counsel, in each case in connection with (A) the enforcement of any rights and remedies under the ***DIP Loan Documents***, (B) the Chapter 11 Cases, including attendance at all hearings in respect of the Chapter 11 Cases; and (C) defending and prosecuting any actions or proceedings arising out of or relating to the Obligations, the Liens securing the Obligations, or any transaction related to or arising in connection with the ***DIP Credit Agreement or the other DIP Loan Documents***.

*See* DIP Term Sheet, at 14(b) (emphasis added).

16. Nowhere in the above-quoted sections do the DIP Motion and the DIP Term sheet contemplate payment of fees related to the sale. While the summary fee statements in the Invoices provide only a glimpse into the type of work performed by the DIP Professionals, it is evident from these summary statements that part of the work was done in furtherance of the sale.

17.     For example, the Gibson Dunn invoice highlights that the professionals: "negotiate[d] with Debtors the bidding procedures order and related pleadings … analyze[d] labor and employment issues …".  The Bass Berry invoice explains that "[t]he firm has provided necessary assistance with general bankruptcy and transaction matters related to Asurion's role as DIP lender and stalking horse bidder. These activities include drafting and negotiating the stalking horse APA, as well as the general review and negotiation of the disclosure schedules and ancillary documents, which also resulted in certain due diligence activities."  The Pachulski invoice does not provide enough specific detail in order for the Committee to understand the scope of the work performed.

18.     Nevertheless, the summary statements in the Invoices do not provide the Committee with the visibility it requires to determine whether the DIP Professionals' fees are reasonable and/or reimbursable under the terms of the Final DIP Order.

## RESERVATION OF RIGHTS

19.      The Committee reserves its right to object to any and all DIP Professionals' fees on reasonableness grounds when the total bills for the DIP Professionals' fees are submitted.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) enter an order denying approval of the DIP Professionals' fees or limiting any approved fees to any reasonable amount that the DIP Professionals can demonstrate are reimbursable under the Final DIP Order; and (ii) grant such other and further relief that the Court deems just and proper.

Dated: August 12, 2022
       Wilmington, Delaware          **FOX ROTHSCHILD LLP**

                                      */s/ Howard A. Cohen*
                                        Howard A. Cohen (DE 4082)
                                        Stephanie J. Slater (DE 6922)

919 North Market Street, Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
Email: hcohen@foxrothschild.com
Email: sslater@foxrothschild.com
-and-

Gordon E. Gouveia (admitted *pro hac vice*)
Jeffrey L. Widman (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
Facsimile: (312) 517-9201
Email: ggouveia@foxrothschild.com
Email: jwidman@foxrothschild.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*